UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| DAVINA HURT, Individually and on behalf of others similarly situated, et al | Case No.: 1:12-CV-00758 |
| | Judge James S. Gwin |
| Plaintiffs, | |
| v. | **SECOND AMENDED CLASS ACTION COMPLAINT WITH JURY DEMAND** |
| COMMERCE ENERGY, INC., et al | |
| Defendants, | |
| JUST ENERGY GROUP, INC., 100 King Street West, Suite 2630 Toronto Ontario, MSX 1E1 | |
| New Party Defendants. | |

Plaintiffs bring this action individually and as putative representatives for a collective action under Section 16 of the Fair Labor Standards Act, 29 U.S.C. § 216, and for a class action under Fed. R. Civ. P. 23.  Plaintiffs allege and complain against the above-named Defendants as follows:

## INTRODUCTION

1.      This is an action brought by Davina Hurt and Dominic Hill (collectively "Plaintiffs") against Defendants, their former employer, for unpaid wages and overtime pursuant to the Fair Labor Standards Act, 29 U.S.C.§ 201, *et seq*. and  Ohio Revised Code Chapter 4111. Plaintiffs bring this case individually and as putative representatives for a collective action under the FLSA and a class action under Ohio's wage and hour laws and Fed. R. Civ. P. 23.  Plaintiffs and the putative class members were incorrectly treated by Defendants as independent contractors. Plaintiffs and the putative class members were not paid at least minimum wage for

all hours worked and were not paid overtime wages for any hours they worked over 40 hours per week, even though they were "non-exempt" employees and thus entitled to such wages under state and federal law.

## JURISDICTION & VENUE

2.      Jurisdiction in this case is based on 28 U.S.C. §§ 1331, 1332 and/or 1337.  This action arises under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. Jurisdiction over the state law claim is pursuant to 28 U.S.C. §1367.

3.      Venue is proper in this Court pursuant to 28 U.S.C. §1391 because Defendants: (a) are authorized to conduct business in this district and have intentionally availed themselves of the laws within this district; (b) do substantial business in this district; and (c) are subject to personal jurisdiction in this district.

## PARTIES

4.      Each named Defendant is collectively referred to herein as "Defendants."

5.      Defendants each do business as "Just Energy" and/or "Commerce Energy."

6.      Defendants Commerce Energy, Inc., and Just Energy Marketing Corp., are subsidiaries of Defendant Just Energy Group, Inc.

7.      Defendants' business primarily involves the marketing and sale of natural gas and/or electricity supply to residential and commercial customers under long term fixed price, price-protected or variable-priced contracts and green energy products.

8.      Defendants employ persons such as Plaintiffs and the putative class members to go door-to-door and market Defendants' services to potential customers.

9.      Defendants operate in Canada and in the United States across approximately 13 states.

10.     Defendant Commerce Energy, Inc. is a California for-profit corporation doing business in Ohio.

11.     Defendant Just Energy Group, Inc., is a Canadian for-profit corporation doing business in Ohio.

12.     Defendant Just Energy Marketing Corp. is Delaware for-profit corporation doing business in Ohio.

13.     Davina Hurt is an adult individual who was employed by the Defendants and treated by Defendants as an independent contractor from approximately July through November, 2011.

14.     Dominic Hill is an adult individual who was employed by the Defendants and treated by Defendants as an independent contractor from approximately August 2 through September 19, 2011.

15.      Hurt and Hill bring this action collectively and as a class action for all persons who at any point in the last 3 years (a) were listed on their Just Energy contract as performing services for the "Commerce Energy" affiliate of Just Energy; (b) were treated as independent contractors; (c) had the job of going door-to-door for Just Energy; and (d) were not paid minimum wage and/or overtime. (hereinafter said persons are referred to as "putative class members").

## FACTS COMMON TO ALL CLAIMS

16.     Plaintiffs and the putative class members do not have a contract to perform work for the Defendants for a set period of time.

17.     Plaintiffs and the putative class members have the ability to work for Defendants indefinitely, subject to Plaintiffs' and the putative class members' right to resign and Defendants' right to terminate them.

18.     Plaintiffs and the putative class members worked for Defendants going door-to-door with the objective of getting potential customers to apply for Defendants' and/or their affiliates' services.

19.     The work performed by Plaintiffs and the putative class members is the primary way in which Defendants get customers to apply for their and/or their affiliates' services.

20.     At or around the time of hiring, Defendants trained Plaintiffs and the putative class members on the business of Just Energy, the procedures to follow in presenting the Just Energy program to potential customers, and the requirements to comply with in performing their job duties. Plaintiffs and the putative class members were given a written script to use when meeting with the customers.

21.     Plaintiffs and the putative class members must adhere to specific company rules when meeting with potential customers. Plaintiffs and the putative class members are reprimanded by Defendants if there are customer complaints or other issues with the performance of their jobs.

22.     During the majority of the weeks of their employment, Plaintiffs worked at least 9am to 9pm 6 days per week. Putative class members were required by Defendants to work the same and/or similar schedule which was fixed by Just Energy and not controlled by the workers..

23.     Defendants required Plaintiffs to wear Just Energy badges when visiting the houses each day they worked.  Defendants expected the putative class members to do the same..

24.     Defendants provided Plaintiffs standard uniforms to wear which consisted of a hat bearing the Just Energy logo, a shirt also with the Just Energy logo, and a jacket with the Just Energy logo (during the winter months) when visiting households to make the Just Energy presentation.  Defendants expected the putative class members to wear the same and/or similar uniforms.

25.     Defendants decide the geographic area or territory in which Plaintiffs and the putative class members will work in a given day and/or week.

26.     On a typical day, Defendants directed Plaintiffs and the putative class members to come to the Just Energy office every morning.  At that time, presentations about Just Energy and presenting the Just Energy products, including sales role-playing, were given to the workers. The Defendants then assigned specific geographic areas for Plaintiffs and the putative class members to solicit potential customers. Just Energy would then transport Plaintiffs and/or putative class members to their territory and back to the office at the end of the shift, or if the shift involved overnight road trips, at the end of the trip.  This transporting was often done in a Just Energy company van.

27.     Plaintiffs and the putative class members are still limited to working only within geographic areas the Defendants permit, either traveling with the group or getting specific permission to work in some other area.

28.     The named Plaintiffs and the class members do not have the skills, nor do they have access to the internal, Just Energy information, to determine which areas are selected for marketing.  For example, they do not know which areas were recently marketed by other Just Energy teams; which areas were recently marketed by competitors; and, other than being told by Just Energy, which areas may lawfully be canvassed by Just Energy

29.     When Plaintiffs and the putative class members go to a potential customer's door, they are to only use materials created by Defendants – a company brochure and a customer application. Defendants require Plaintiffs and the putative class members to present these items to the potential customer.

30.     Attached hereto as Exhibit A is the above-referenced application and brochure used by Plaintiffs in performance of their jobs. Exhibit A, or a document in substantially the same form, is used by all putative class members in the performance of their jobs.

31.     The application is only the first step in signing a potential customer up for the service.

32.     Plaintiffs and the putative class members do not actually sell any of the Defendants' and/or their affiliates' services.

33.     Plaintiffs and the putative class members have no contact with the potential customer after the application is signed.

34.     The sole fact that the potential customer signed the application does not entitle the potential customer to Defendants' service.

35.     The sale is not complete until four things occur: First, Defendants (through workers other than Plaintiffs and the putative class members) speak with each potential customer who signed the application and require the potential customer to go through a phone verification process. Second, the Defendants require the Plaintiffs and the putative class members to submit the signed application to the regional Just Energy office for review to ensure that all the required information is complete. Third, the Defendants send the completed application to Just Energy's Head Office in Mississauga, Ontario for processing. And fourth, the utility company (whom Defendants contract with to provide the service to the potential customer) must approve the

potential customer for Defendants' discount program. There are a myriad of reasons outside the control of the Plaintiffs and the putative class members as to why a sale might not occur.

36.     If any of the above requirements do not occur, Defendants will not provide the customer its service and similarly, a potential customer is not bound to buy Defendants' service.

37.     As a result of the pre-requisites needed for a customer to obtain Defendants' service, Plaintiffs and the putative class members can never complete the sale to the potential customer at the time they meet with the potential customer and have them sign the application.

38.     Not all potential customers that fill out an application satisfy the two pre-requisites to obtain Defendants' service.

39.     For each potential customer who does satisfy all requirements to obtain Defendants' service (i.e. signs the contract, completes the verification process, and is approved by the gas and/or electric company), Plaintiffs are to receive $35 in payment from Defendants, similar to the putative class members who likewise receive $35 or some other similar fixed amount.

40.     Plaintiffs and the putative class members are then supposed to receive an additional $15 (or similar amount) once the potential customer pays his or her first month's utility bill.

41.     Plaintiffs and the putative class members were also to receive a one-time $500 (or similar amount) bonus after twenty (or a similar number) of the potential customers they signed up met the two pre-requisites and became Defendants' customers.

42.     As a result of Defendants' method of compensating Plaintiffs and the putative class members, Plaintiffs and the putative class members have not always been paid minimum wage for all hours worked in a given week, and in some weeks have not received any pay.

43.     Some of Plaintiff Hurt's pay records are attached hereto as Exhibit B. These records indicate that in a given week, Plaintiff Hurt never received more than $245.00 for a week's work (excluding the one week she received a $500 bonus), and in some weeks she did not receive any pay.

44.     Plaintiffs and the putative class members also never received any overtime pay for the hours they worked over 40 hours per week. Plaintiffs and the putative class members were always only paid $35 and/or another set amount for each of the customers who ultimately purchased Defendants' service.

45.     The exact amounts Plaintiffs' pay and the putative class members' pay was deficient of minimum wage and/or overtime pay in each given week during their employment can be determined in part by Defendants' pay records, which Plaintiffs intend to request during discovery.

46.     Plaintiffs and the putative class members were employees with Defendants.

47.     Plaintiffs and the putative class members were "non-exempt" employees under the state and federal wage and hour law, as nothing about their pay, title, duties, or anything else qualifies them for any exemption under state or federal law.

48.     Non-exempt employees are entitled to a minimum wage for all hours worked and for overtime wages for all hours worked over 40 per week.

49.     Plaintiffs and the putative were not paid for all hours worked and were not paid overtime wages for the hours they worked over 40 per week.

## COLLECTIVE ACTION ALLEGATIONS

50.     Plaintiffs incorporate by reference the foregoing allegations as if fully rewritten herein.

51.     Plaintiffs bring this action not only for themselves but as representatives for a collective action on behalf of all persons employed with Defendants at any time during the period from 3 years of the date of filing Plaintiffs' complaint and who meet the definition of the putative class members set forth above.

52.     Plaintiffs are similarly situated to those persons and will prosecute this action vigorously on their behalf.

53.     Plaintiffs, through counsel, will file a request under 29 U.S.C. Section 216 for this court to notify all of those persons to allow them to opt-in to this proceeding to be subject to this court's decision, or that of the fact finder, on the right to the wages and overtime described above.

## CLASS ACTION ALLEGATIONS

54.     Plaintiffs incorporate by reference the foregoing allegations as if fully rewritten herein.

55.     Plaintiffs bring this action not only for themselves but as representatives for a class action on behalf of all persons employed with Defendants in Ohio who meet the definition of the putative class members set forth above during any time in the two years prior to the date of filing Plaintiffs' complaint.

56.     The class numbers at least 40 persons (the exact number will be in Defendants' records) and is so numerous that joinder of all members is impracticable, and it is further impracticable to bring all such persons before this Court.

57.     The injuries and damages to the class present questions of law and fact that are common to each class member within the class, and that are common to the class as a whole.

58.     Defendants have engaged in the same conduct regarding all of the other members of the class asserted in this suit.

59.     The claims, defenses, and injuries of the representative Plaintiffs are typical of the claims, defenses, and injuries of the class, and the claims, defenses, and injuries of the class members within the class are typical of those of the entire class.

60.     Plaintiffs will fully and adequately protect and represent the class, and all of its putative class members.

61.     The identity of all members of the class cannot be determined at this time, but will be so determined at a later time upon obtaining discovery from Defendants and others.

62.     The prosecution of separate actions by each member of the class would create a substantial risk of inconsistent or varying adjudications with regard to individual members of each class that would establish incompatible standards of conduct for Defendants.

63.     The prosecution of separate actions would also create a substantial risk of adjudication with respect to individual members of each class which, as a practical matter, would be dispositive of the interest of other members not parties to the adjudication, thereby substantially impairing and impeding their ability to protect those interests. Further, the maintenance of each class as a class action is the superior means of disposing of the common questions which predominate herein.

## FIRST CLAIM FOR RELIEF

**Violation of Fair Labor Standards Act ("FLSA")**
**(Collective Action)**

64.     Plaintiffs incorporate by reference the foregoing allegations as if fully rewritten herein.

65.    Defendants are "employers" covered by the minimum wage and overtime requirements set forth in the Fair Labor Standards Act ("FLSA").

66.    As employees for Defendants, Plaintiffs and the putative class members work or worked hours in which they were not paid minimum wage.

67.    As employees for Defendants, Plaintiffs and the putative class members work or worked in excess of the maximum weekly hours permitted under the FLSA but were not paid overtime for those excess hours.

68.    Plaintiffs and the putative class members do not qualify for any exemption from the minimum wage and overtime obligations imposed by the FLSA.

69.    Throughout Plaintiffs' and the putative class members' employment, Defendants have known that Plaintiffs and the putative class members were employees – not independent contracts – and have known that Plaintiffs and the putative class members are not exempt from the wage and overtime obligations imposed by the FLSA.  Defendants have known that it is required to pay Plaintiffs and the putative class members a minimum wage for all hours worked. Defendants have also known that it is required to pay overtime wages at the rate of time and a half to Plaintiffs and the putative class members for hours worked over 40 in any week. In spite of such knowledge, Defendants have willfully withheld and failed to pay the wages and overtime compensation to which Plaintiffs are entitled.

70.    Pursuant to the FLSA, Plaintiffs and the putative class members are entitled to at least minimum wage for all hours worked and for unpaid overtime at a rate of one and one half times their hourly wage. Because the Defendants' failure to pay such wages was willful pursuant to 28 U.S.C. § 255(a), Plaintiffs and the putative class members are entitled to these wages dating back three years.

71.     The identity of all putative class members is unknown at this time, but is known to Defendants, and is set forth in Defendants' records.  Plaintiffs are entitled to review these records and immediately identify the other putative class members who have a right to join this collective action.

72.      The exact amount of compensation, including overtime compensation that Defendants have failed to pay the Plaintiffs and the putative class members is unknown at this time, as many of the records necessary to make such precise calculations are in the possession of Defendants, or were not kept by Defendants.

73.     The FLSA requires employers to make, keep, and preserve records of the wages, hours, and other conditions and practices of employment, and to preserve such records. Plaintiffs and the putative class members are entitled to review their records of hours worked to determine the exact amount of overtime and minimum wages owed by Defendants. Absent Defendants keeping these records as required by law, Plaintiffs are entitled to submit their information about the number of hours worked.

74.     Defendants' failure to pay Plaintiffs and the putative class members compensation in accordance with the minimum wage provisions and/or at the lawful overtime rates is not based on good faith or reasonable grounds, or a belief that such failure is not in violation of the FLSA. Therefore, pursuant to 29 U.S.C. § 216(b), Plaintiffs are entitled to liquidated damages in an amount equal to the compensation and/or overtime which they have not been paid.

75.     Plaintiffs have been required to file this action as the result of Defendants' actions in failing to pay them proper compensation.  As such, Plaintiffs are entitled to attorneys' fees and costs incurred pursuant to 28 U.S.C. § 216(b).

**SECOND CLAIM FOR RELIEF**
**Overtime violations under Ohio law**

**(Class Action)**

76.     Plaintiffs incorporate by reference the foregoing allegations as if fully rewritten herein.

77.     Defendants are employers covered by the overtime requirements set forth in Ohio's Minimum Fair Wage Standards Act, Ohio Revised Code Chapter 4111.

78.     As employees for Defendants, Plaintiffs and the putative class members work or worked in excess of the maximum weekly hours permitted under O.R.C. 4111.03, but they were not paid overtime wages for this time spent working.

79.     Plaintiffs and the putative class members do not qualify for any exemption from the wage and overtime obligations imposed by the Ohio Revised Code.

80.     Pursuant to the Ohio Revised Code, Plaintiffs and the putative class members are entitled to unpaid overtime at a rate of one and one half times their hourly wage for all hours worked over 40 hours per week.

81.     Pursuant to the Ohio Revised Code, Plaintiffs and the putative class members are entitled to unpaid overtime wages dating back two years.

82.     The exact amount of compensation, including overtime compensation that Defendants have failed to pay the Plaintiffs and the putative class members is unknown at this time, as many of the records necessary to make such precise calculations are in the possession of Defendants, or were not kept by Defendants.

83.     The Ohio Revised Code requires employers to make, keep, and preserve records of the wages, hours, and other conditions and practices of employment, and to preserve such records. Plaintiffs are entitled to review their records of hours worked to determine the exact amount of overtime wages owed by Defendants. Absent Defendants keeping these records as

required by law, Plaintiffs are entitled to submit their information about the number of hours worked.

84.     Pursuant to the Ohio Revised Code, Plaintiffs are entitled to attorneys' fees and costs incurred.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request judgment against Defendants as follows:

1.      Awarding Plaintiffs their unpaid wages including overtime wages as to be determined at trial together with any liquidated damages allowed by law;

2.      Enjoining Defendants from engaging in future violations of the state and federal wage and hour laws;

3.      For a judgment against Defendants for all damage, relief, or any other recovery whatsoever;

4.      For an Order determining at the earliest possible time that this matter may proceed as a class action under Civil Rule 23 and certifying this case as such;

5.      Awarding Plaintiffs their reasonable costs and attorneys' fees necessarily incurred herein; and

6.      Awarding Plaintiffs such other and further relief as the Court deems just and proper in the premises.

Respectfully submitted,


*/s/ Michael R. Rudick*
Patrick J. Perotti, Esq. (#0005481)
Nicole T. Fiorelli, Esq. (#0079204)
Michael R. Rudick, Esq. (#0087800)
**DWORKEN & BERNSTEIN CO., L.P.A.**
60 South Park Place
Painesville, Ohio 44077
(440) 352-3391      (440) 352-3469 Fax
Email:  *pperotti@dworkenlaw.com*
               *nfiorelli@dworkenlaw.com*
               *mrudick@dworkenlaw.com*

Murray Richelson, Esq. (#0021112)
**DAVID A. KATZ CO. LPA**
50 Public Square Ste 842, Terminal Tower
Cleveland, Ohio 44113

(216) 696-5250 [Phone]
(216) 696-5256 [Fax]
Email: *mrichelson@aol.com*

Counsel for Plaintiffs

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury as to all claims so triable.

*/s/ Michael R. Rudick*
Michael R. Rudick, Esq. (#0087800)
DWORKEN & BERNSTEIN CO., L.P.A.

One of the Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants today (October 16, 2012).

*/s/ Michael R. Rudick*
Michael R. Rudick, Esq. (#0087800)
DWORKEN & BERNSTEIN CO., L.P.A.

One of the Attorneys for Plaintiffs