UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                                    :
DAVINA HURT, *et al.*,                              :        CASE NO. 1:12-CV-00758
                                                    :
                    Plaintiffs,                     :
                                                    :
vs.                                                 :        OPINION & ORDER
                                                    :        [Resolving Docs. No. 80, 82, 83.]
COMMERCE ENERGY, INC, *et al.*,                     :
                                                    :
                    Defendants.                     :
                                                    :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

        This is a case about minimum wage and overtime under the Fair Labor Standards Act[1] and

overtime under the Ohio Minimum Fair Wage Standards Act[2].  Plaintiffs are door-to-door workers

who solicited residential customers for the Defendants' energy services.   Now, Defendants

Commerce Energy, Inc, Just Energy Marketing Corp, and  Just Energy Group, Inc, have moved for

summary judgement.[3]   For the reasons below, the Court **GRANTS IN PART** and **DENIES IN**

**PART** the Defendants' motion for summary judgement.

## I. Background

        In this case, the Plaintiffs are workers hired by Defendant Just Energy Marketing to  say that

Just Energy failed to pay them required wages and overtime.  Just Energy responds that the Plaintiffs

were independent contractors and exempt outside salesman who cannot make a claim under the

FLSA.  In deciding whether an outside sales exemption allows Just Energy to avoid overtime and

---

[1] 29 U.S.C. §§ 201-219.

[2] Ohio Rev. Code §§ 4111.01-.03.

[3] Doc. 80.  Throughout this opinion the Court refers to Commerce Energy, Inc, as "Commerce Energy"; Just
Energy Marketing Corp as "Just Energy Marketing" and  Just Energy Group, Inc. as "Just Energy."  Collectively, the
Court refers to the companies as "Just Energy."

Case No. 1:12-CV-00758
Gwin, J.

the minimum wage, the Court mostly looks to how much supervision Just Energy exerted over the

Plaintiffs' work activities.

Just Energy Group, a Canadian company, provides electric power and natural gas supply to

1.8 million residential and commercial customers in Canada and the United States.[4]  It operates in

the U.S. through its licensed subsidiaries, including Defendant Commerce Energy.[5]  Specifically,

Commerce Energy operates in California, Georgia, Maryland, Massachusetts, New Jersey, Ohio, and

Pennsylvania.[6]  Another Just Energy Group subsidiary, Defendant Just Energy Marketing, hires

employees who go door-to-door to solicit customers.[7]  Finally, Just Energy hires "regional

distributors" to hire, train, and manage these workers and run Just Energy's local offices.[8]

The Plaintiffs worked as door-to-door salespeople[9] for Just Energy Marketing.  They worked

at various times from 2009 to 2013 at Just Energy's Beachwood, Ohio office.[10]  During most of that

time, Dennis Piazza was the regional distributor for the Beachwood office.[11]  Just Energy says that

Piazza is an independent contractor himself, and his business is separately incorporated as Star

Energy, Inc.[12]

### A.  Ohio Regulations & PUCO

Because Just Energy operates in multiple states, it adopted policies to have its door-to-door

---

[4] Docs. 1; 9; 82 at 8.

[5] Docs. 82 at 8; 80-1 at 8.

[6] Doc. 82 at 9.

[7] Docs. 82 at 9; 80-1 at 8.

[8] Doc. 80-1 at 11; 82 at 10.

[9] The Court's choice of the word "sales" here and throughout this opinion is descriptive.  The word choice has no bearing on whether the Plaintiffs are exempt as outside *salesman* under FLSA.

[10] Doc. 80-1 at 11.

[11] *Id.*

[12] *Id.*

Case No. 1:12-CV-00758
Gwin, J.

workers comply with Ohio regulations.[13/]  Specifically, in Ohio, the Public Utilities Commission of

Ohio ("PUCO") regulates energy suppliers like Just Energy.[14/]  Generally, PUCO requires suppliers

who solicit door-to-door to provide customers with acknowledgment forms; have independent

third-party verification of at least fifty percent of all its customers; print terms and conditions in ten-

point type or greater; and require the door-to-door solicitors to display a valid photo identification.[15/]

But Just Energy's door-to-door solicitors have additional requirements.  In 2010, Commerce

Energy entered into a settlement agreement with the Ohio PUCO to renew its retail natural gas

supplier certificate.[16/]  That agreement resulted from an investigation into customer complaints about

the sales, solicitation, and enrollment practices of Just Energy's residential door-to-door solicitors.[17/]

In the settlement, Commerce Energy agreed to implement an in-state quality assurance

program "to provide the company with additional oversight of its sales force, as well as retrain all

Ohio sales agents to assure compliance with PUCO's rules."[18/]  Commerce also agreed that all its

new customers would be subject to a new third-party independent verification process.[19/]  That

process requires door-to-door solicitors to initiate a third-party verification call before leaving the

premises.[20/]  The solicitors cannot be present on the premises during the call, and they cannot return

to the premises after the call.[21/]  Just Energy's policies for its Ohio door-to-door solicitors reflect

---

[13/]*Id.* at 8.

[14/]*Id.* at 10.

[15/]*Id.*

[16/]80-1 at 10.

[17/]*Id.*

[18/]*Id.*

[19/]Doc. 80-12 at 7.

[20/]*Id.*

[21/]*Id.*

Case No. 1:12-CV-00758
Gwin, J.

these requirements.[22]

### B. Hiring and Orientation

For its door-to-door solicitors, Just Energy often hires low-skill workers, many without prior sales experience.[23]  At its Beachwood office, Just Energy regional distributors and supervisors conducted short interviews before hiring these workers, sometimes completing the interviews in large groups.[24]  After the interviews, Just Energy required its solicitors to sign employment contracts.[25]

The contracts required the Plaintiffs to comply with federal, state, and local laws and regulations and Just Energy Marketing's codes of behavior.[26]  Further, the contracts said that the Plaintiffs would be paid a commission "according to the commission schedule in place at the time."[27]  During the Plaintiffs' employment, the commission schedule said that Just Energy paid the Plaintiffs approximately $35 for every order that they obtained.[28]  According to Just Energy, the Plaintiffs also "enjoyed the potential to earn productivity bonuses and additional commissions if customers remained with Commerce for certain periods of time."[29]  But if "a customer cancelled an agreement after signing, then no commissions were paid at all; if the customer cancelled after the commission was already paid, it was subject to recoupment."[30]

---

[22]/Doc. 80-11 at 2.

[23]/Doc. 82-3 at 11.

[24]/Doc. 82-6 at 5.

[25]/Docs. 80 at 11; 82 at 14.

[26]/Doc. 80-13 at 2; 82 at 11.

[27]/Doc. 80-13 at 3.

[28]/Doc. 80 at 18; 82 at 13.

[29]/Doc. 80 at 18.

[30]/Id.

-4-

Case No. 1:12-CV-00758
Gwin, J.

After signing their employment contracts, Just Energy required its door-to-door workers to attend an orientation session led by a regional distributor.[31] These orientation sessions covered a number of topics "including company and industry background, the products and services being sold, and helpful sales techniques."[32] After the orientation, Just Energy generally required the Plaintiffs to shadow a more experienced solicitor in the field[33] for one or two days before soliciting customers on their own.[34] Just Energy provided a script for the workers to use with customers.[35] The Plaintiffs used these scripts to varying degrees.[36]

*C. Disputed Roles and Responsibilities*

Just Energy and the Plaintiffs disagree about their respective roles and responsibilities. According to Just Energy, the Plaintiffs' primary responsibilities were "knocking on potential customers' doors, selling Commerce's services and obtaining signed sales agreements for Commerce's energy supplies."[37] Just Energy says that the "Plaintiffs were absolutely allowed to travel and work independently."[38] It says that they worked free from supervision, and Just Energy did not require them to work particular hours.[39] Both parties agree, however, that the Plaintiffs worked approximately six to seven days a week for approximately twelve hours a day.[40]

In contrast, the Plaintiffs say that Just Energy subjected them to significant supervision.[41]

---

[31] *Id.* 12.
[32] *Id.*
[33] *Id.* at 12.
[34] Docs. 80-1 at 12; 82 at 10.
[35] Docs. 80-1 at 13; 82 at 10.
[36] Doc. 80 at 12.
[37] Doc. 80-1 at 12.
[38] *Id.* at 16.
[39] *Id.* at 22.
[40] Docs. 80-1 at 13; 82 at 11.
[41] Doc. 82 at 9-12.

Case No. 1:12-CV-00758
Gwin, J.

They say that Just Energy regional distributors and supervisors controlled the length of the Plaintiffs'
work week and work day by assigning them to a work crew and van, sending the vans to solicit
specific neighborhoods, and prohibiting the vans from returning to the office before 9 p.m.[42]  The
Plaintiffs also say that Just Energy regional distributors required the Plaintiffs to knock on a specific
number of doors and obtain a certain number of orders, required the Plaintiffs to report to the office
every morning, prevented the Plaintiffs from working independently, controlled the Plaintiffs' break
time, and required the Plaintiffs to purchase and wear Just Energy branded clothing.[43]

*D. Court Proceedings*

In March 2012, the Plaintiffs filed a complaint for unpaid wages and overtime under FLSA
and unpaid overtime under the Ohio Wage Act.[44]  Now Just Energy has filed a motion for summary
judgment.[45]  With the motion, Just Energy says that they are entitled to summary judgment because:
(1) the Plaintiffs are exempt from FLSA and the Ohio Wage Act as outside salesman; (2) the
Plaintiffs are independent contractors, not employees; and (3) Plaintiff Black's claims are untimely.[46]
But Just Energy withdrew its argument that it properly classified the Plaintiffs as independent
contractors for purposes of summary judgment only.[47]  As a result, the Court examines only Just
Energy's outside salesman and timeliness arguments.

## II. Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings,

---

[42]*Id.* at 11.

[43]*Id.*

[44]Doc. 1.

[45]Doc. 80.

[46]*Id.*

[47]"Defendants hereby withdraw their arguments in support of Plaintiffs' classification as independent
contractors raised in support of their Consolidated Motion for Summary Judgment."  Doc. 81 at 3.

Case No. 1:12-CV-00758
Gwin, J.

the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue

as to any material fact and that the movant is entitled to judgment as a matter of law."[48]

### III. Law and Analysis

Federal law requires employers to pay employees a minimum wage and overtime pay for

hours worked in excess of the statutory maximum.[49]  Not all employees, however, are protected by

this requirement.  One exception is that "any employee employed . . . in the capacity of outside

salesman" is not entitled to minimum wage or overtime.[50]  Just Energy says that the Plaintiffs are

excepted from FLSA under this outside salesman exemption.

Just Energy, as the employer, has the burden of proving that the Plaintiffs were exempt from

the overtime provision.[51]  Moreover, Just Energy must establish that the Plaintiffs meet every aspect

of the definition for an exempt employee[52] because exemptions from FLSA's coverage are narrowly

construed against the employer who asserts them.[53]  "[H]ow an employee spends his time is a

question of fact, while the question of whether his activities fall within an exemption is a question

---

[48]/*Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008).  The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of Plaintiffs' case.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "A fact is material if its resolution will affect the outcome of the lawsuit." *Martingale, LLC v. City of Louisville*, 361 F.3d 297, 301 (6th Cir. 2004).  In responding to a summary judgment motion, Plaintiffs "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment."  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989) (internal quotation omitted).  In deciding a motion for summary judgment, the Court views the factual evidence and draws all reasonable inferences in favor of the non-moving party. *Thomas v. Cohen*, 453 F.3d 657, 660 (6th Cir. 2004) (citations omitted).  Ultimately the Court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Martingale*, 361 F.3d at 301.

[49]/*See* 29 U.S.C. §§ 206, 207 (2010).

[50]/29 U.S.C. § 213(a)(1) (2004).

[51]/*Mich. Ass'n of Governmental Employees v. Mich. Dep't of Corr.*, 992 F.2d 82, 83 (6th Cir. 1993).

[52]/*See Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974).

[53]/*Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960).

-7-

Case No. 1:12-CV-00758
Gwin, J.

of law."[54]

Ohio applies overtime pay the same as FLSA.[55]  Therefore, the Court's FLSA findings apply equally to the Plaintiffs' claims under the Ohio Wage Act.

*A.  Making Sales*

The Plaintiffs' evidence raises a genuine issue of material fact about whether they were "making sales," and thus, qualified as outside salesman.  FLSA does not define "outside salesman," instead leaving it to be "defined and delimited . . . by regulations of the Secretary [of Labor]."[56]  The Department of Labor defines "outside salesman" as "any employee . . . [w]hose primary duty is . . . . making sales within the meaning of [29 U.S.C. § 203(k)]" and who is "customarily and regularly engaged away from the employer's place or places of business in performing such primary duty."[57]  Section 203(k) defines a "sale" as "any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition."[58]

In *Christopher v. SmithKline Beecham Corp.*, the United States Supreme Court found that pharmaceutical representatives were exempt outside salespeople even though they did not actually accomplish a "sale" of drugs to the patient.[59]  Because Congress meant to define sales broadly to

---

[54]/*Reich v. Wyoming*, 993 F.2d 739, 741 (10th Cir. 1993).  *See also Renfro v. In. Mich. Power Co.*, 233 F.Supp.2d 1174, 1180 (W.D. Mich. 2002); *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1226 (5th Cir. 1990) (stating that "the ultimate determination of whether an employee is exempt [is] properly characterized as a conclusion of law," even though "based on both historical fact and factual inferences").

[55]/*See, e.g., Douglas v. Argo-Tech Corp.*, 113 F.3d 67 n. 2 (6th Cir. 1997) (noting that Ohio's wage and hour law "parallels the FLSA" and approaching the Ohio law and the FLSA in a "unitary fashion" is appropriate).

[56]/29 U.S.C. § 213(a)(1).

[57]/29 C.F.R. § 541.500 (2011).  Here, "Plaintiffs deny they were making sales, but acknowledge that their work was performed primarily at potential customers' residences."  Doc. 82 at 15.

[58]/29 U.S.C. § 203(k).  In light of *Christopher v. SmithKline Beecham Corp.*, the Court will not construe the term "sale" narrowly.  *See* 132 S. Ct. 2156, 2172 n. 21 (2012).

[59]/*Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2159 (2012).

Case No. 1:12-CV-00758
Gwin, J.

"accommodate industry-by-industry variations in methods of selling commodities,"[60/] the Supreme

Court said that courts should consider the impact of regulatory requirements or "arrangements that

are tantamount, in a particular industry, to a paradigmatic sale of a commodity."[61/]  Thus, because

federal regulations prevented the pharmaceutical representatives from engaging in the actual sale of

drugs to the patient, the Supreme Court found it was enough that the representatives "promoted"

sales to doctors who in turn made "nonbinding commitments" to prescribe the drugs to their

patients.[62/]

In *Clements v. Serco*, the United States Court of Appeals for the Tenth Circuit held that

military recruiters were not exempt outside salespeople because they lacked the authority to enlist

a recruit.[63/]  There, recruiters "sold" potential recruits on the idea of the Army, but the Army retained

the authority to enlist recruits.[64/]   The Tenth Circuit held that the recruiters did not "make sales"

because the Army required the recruits to report to a military processing station for a physical, job

selection, and an oath before enlisting.[65/]  Because the Army retained discretion to enlist a recruit,

the recruiters were not outside salesman.[66/]

Similarly, in *Wirtz v. Keystone Readers*, the United States Court of Appeals for the Fifth

Circuit  found that "student salesman" were not outside salesman.[67/]  There, a company hired student

salesman to "obtain orders" for magazine subscriptions by door-to-door solicitation.[68/]  The company

---

[60/] *Id.* at 2171.

[61/] *Id.* at 2171-2.

[62/] *Id.* at 2172.

[63/] 530 F.3d 1224, 1225 (2008).

[64/] *Id.* at 1227.

[65/] *Id.*

[66/] *Id.* at 1228.

[67/] *Wirtz v. Keystone Readers Serv., Inc.*, 418 F.2d 249, 253 (5th Cir. 1969).

[68/] *Id.* at 252.

Case No. 1:12-CV-00758
Gwin, J.

required the student salesman to give their order cards to a "student manager," who then contacted the customer, verified the customer met the company's qualifications, and passed the order on to a "verifier."[69]  The verifier then checked the order to make sure that the customer met the company's qualifications.[70]  Only then did the company execute a contract.[71]  The Fifth Circuit concluded that the student salesman were not outside salesman because they did not "mak[e] sales of their own."[72]

Taking the evidence in the light most favorable to the Plaintiffs, Just Energy fails to show, as a matter of law, that the Plaintiffs "made sales."  Just Energy says that *Christopher* should control because the Plaintiffs obtained "far more" than the nonbindinding commitments at issue in *Christopher*.[73]  The Court agrees that the Plaintiffs obtained contracts, but *Christopher* is distinguishable.

Unlike the pharmaceutical representatives in *Christopher*, the Plaintiffs are not prohibited from completing a contract by state or federal regulations.  Instead, Just Energy prevented the Plaintiffs from completing a sale by retaining unlimited discretion to accept and reject the orders obtained by the Plaintiffs.  For example, in Just Energy's New Customer User Guide, Just Energy says: "This Agreement will become firm and binding when (i) *Just Energy accepts this Agreement*, and (ii) the LDC [local distributor] accepts and successfully implements the Customer's enrolment submission from Just Energy."[74]  Similarly, in Just Energy's Regional Distributor Services Agreement, Just Energy says: "The Service Provider and the Principal understand and agree that

---

[69] *Id.*
[70] *Id.* at 253.
[71] *Id.*
[72] *Id.*
[73] Doc. 83 at 5.
[74] Doc. 82-17 at 6 (emphasis added).

-10-

Case No. 1:12-CV-00758
Gwin, J.

JUST ENERGY or any Affiliate thereof *retain the sole and unfettered discretion to reject any Energy Contract submitted* (whether by an Independent Contractor, the Principal or the Service Provider)."[75]

Here, neither Ohio law[76] nor the PUCO agreement[77] require Just Energy to retain unlimited rejection authority.  And Just Energy has failed to provide evidence showing that this right to reject contracts was necessary to comply with regulations or the PUCO agreement.  Just Energy has not shown that it accepts agreements that comply with the applicable regulations.  The contracts the Plaintiffs bring to Just Energy are merely proposals until Just Energy accepts them.  Therefore, because Just Energy retains an unlimited right of rejection, the Plaintiffs are more like the student salesman in *Wirtz* and the military recruiters in *Serco* whose employers retained discretion to accept and reject their orders.

Additionally, like the magazine company in *Wirtz*, Just Energy required the Plaintiffs to submit their orders for further review before Just Energy chose to accept or reject them.[78]  While it is true that Just Energy's evidence shows that the PUCO agreement requires Just Energy to conduct third-party verification,[79] Just Energy has failed to show that the regulations require a credit check and approval of the customer[80] by the local distributor.  Thus, the Plaintiffs' evidence raises a genuine issue of material fact about whether the Plaintiffs were "making sales," and thus, qualified for the outside salesman exemption.

B.  *External Indicta*

---

[75]/Doc. 82-15 at 5 (emphasis added).

[76]/Ohio Admin. Code 4901:1-29-06.

[77]/Doc. 80-12.

[78]/*See, e.g., supra* notes 50, 51.  *See also* Doc. 82-10 at 9.

[79]/In light of *Christopher*, the Court finds that Just Energy's third-party verification system does not prevent Plaintiffs from making sales within FLSA.  *See* 132 S. Ct. at 2171-2.

[80]/*See, e.g., Fields v. AOL Time Warner, Inc.*, 261 F. Supp. 2d 971, 974 (W.D. Tenn. 2003).

Case No. 1:12-CV-00758
Gwin, J.

The Court's conclusion that Just Energy is not entitled to summary judgment is further supported by the Plaintiffs' evidence that shows a genuine issue of material fact exists about whether the Plaintiffs bear the "external indicia" of outside salesman.[81/]  Courts have articulated "external indicta" that are probative of an employee's status as an outside salesman.  Among these factors, courts may consider whether the employees: (1) receive commission compensation;[82/] (2) receive specialized sales training;[83/] (3) must solicit new business;[84/] (4) were hired for their sales experience;[85/] and (5) were directly supervised.[86/]  None of the indicia of sales-relatedness can be considered in isolation.[87/]  Instead, courts consider the totality of the circumstances in a task-related context.[88/]

### i.  Indicative of outside sales

First, the Plaintiffs received commission compensation.  While Plaintiffs Black and Fitzpatrick say that they believed Just Energy would pay them if they did not obtain signatures,[89/] Hurt, Hill, White, and Scott all say that Just Energy told them they were going to be paid on a commission basis[90/].  Further, the Plaintiffs signed agreements that read, "The Contractor will be compensated for Effective Contracts according to the commission schedule in place at the time of

---

[81/]*See* *Christopher*, 132 S. Ct. at 2172.

[82/]*See, e.g.*, *Christopher*, 132 S. Ct. at 2173 (discussing "incentive compensation"); *Wirtz*, 356 F.2d at 430 (finding the plaintiffs' "commission was relatively insignificant").

[83/]*See, e.g.*, *Nielsen v. DeVry, Inc.*, 302 F. Supp. 2d 747, 757 (W.D. Mich. 2003) (collecting cases).

[84/]*See, e.g.*, *id.*

[85/]*See, e.g.*, *Christopher*, 132 S. Ct. at 2176 ("Petitioners were hired for their sales experience.").

[86/]*See, e.g.*, *Nielsen*, 302 F. Supp. 2d at 756.

[87/]*See* *Hodgson v. Krispy Kreme Doughnut Co.*, 346 F.Supp. 1102, 1103 (M.D.N.C.1972).

[88/]*See* *id.*

[89/]Docs. 80-8 at 5; 82-4 at 7.

[90/]*See* Docs. 80-4 at 14; 80-6 at 6; 80-7 at 10; 80-9 at 7.

Case No. 1:12-CV-00758
Gwin, J.

submission of the contracts."[91]  The Plaintiffs have failed to provide evidence to the contrary.  Thus, the Court finds that Just Energy paid the Plaintiffs on a commission basis.

Second, the Court finds that the Plaintiffs received sales training.  After Just Energy hired the Plaintiffs, it required them to attend an orientation session where the regional distributors discussed company history, industry background, and sales techniques.[92]  For example, White says that his orientation leader described "how to approach someone or how to approach different people . . . Basically how to talk to people."[93]  Moreover, the Plaintiffs say that Just Energy required them to role play and practice sales techniques before they left the Just Energy office in the mornings.[94]  Thus, the Court finds that the Plaintiffs received specialized sales training.

Third, the Court finds that the Plaintiffs were responsible for soliciting new business for Just Energy.  Just Energy hired the Plaintiffs to go door-to-door and solicit new customers for its gas and electricity services.[95]  For example, Hurt confirmed that her role "in marketing on behalf of Just Energy Marketing Corporation was really to obtain new customers for Just Energy's gas and electric services."[96]  The Plaintiffs also signed contracts that read, "The Contractor is engaged in the business of selling (or soliciting the safe of) consumer products (natural gas and electricity)."[97]  Because the Plaintiffs have failed to show evidence to the contrary, the Court finds that the Plaintiffs were responsible for soliciting new business for Just Energy.

ii.  Not indicative of outside sales

---

[91]/Doc. 80-13 at 3.

[92]/Docs. 80-4 at 8-9; 80-5 at 5.

[93]/Doc. 80-7 at 9.

[94]/Docs. 80-4 at 30; 80-6 at 23.

[95]/Doc. 80-4 at 28.

[96]/Doc. 80-4 at 28.

[97]/Doc. 80-13 at 9.

-13-

Case No. 1:12-CV-00758
Gwin, J.

Fourth, the Court finds that Just Energy did not hire the Plaintiffs for their prior sales experience. To the contrary, the Plaintiffs' evidence shows that Just Energy routinely hired workers with *no* prior sales experience. For example, Black said he had "never sold nothing" before Just Energy hired him.[98] Fitzpatrick, Hurt, Black, Scott, and White also say that they had no prior sales experience before Just Energy hired them.[99] Just Energy itself confirms that its door-to-door workers "are hired off the street and there's no requirement whatsoever of any prior skill to get this job."[100] Thus, Just Energy did not hire the Plaintiffs for their prior sales experience.

Fifth, Plaintiff's evidence shows a genuine issue of material fact about the level of supervision Just Energy exerted on the Plaintiffs. On this point, the parties respective positions are quite different. Generally, Just Energy says that the Plaintiffs enjoyed significant freedom from supervision.[101] But the Plaintiffs say that Just Energy exerted significant control over all aspects of the Plaintiffs' work. The Court examines this issue in detail.

The Plaintiffs' evidence shows that Just Energy controlled their work schedules. While Just Energy says that the Plaintiffs' employment agreement provided that they were free to work whatever days and hours they choose,[102] the Plaintiffs evidence shows that Just Energy dictated the days and times they could work. For example, Hurt says that Piazza told her that she could not work for Just Energy unless she worked from 9 a.m. till 9 p.m.[103] Hill says that he wanted to work five days per week, but Piazza told him that he had to work six.[104] Fitzpatrick says that Piazza told her that she

---

[98] Doc. 80-8 at 17.
[99] Docs. 80-5 at 3-4; 80-9 at 3; 82-6 at 3; 82-11 at 3.
[100] Doc. 82-3 at 11.
[101] Doc. 80-13 at 3.
[102] Doc. 80-13 at 3.
[103] Doc. 82-6 at 10.
[104] Doc. 80-6 at 3.

-14-

Case No. 1:12-CV-00758
Gwin, J.

had to work seven days a week from 9 a.m. till 9 p.m.[105]  Black says, "If you didn't work all day—you couldn't leave . . . . If you didn't do that, you tended to get fired for not following their rules."[106]  White says that Piazza told her the workers "weren't allowed to come back to the office before 9:00 [p.m.]."[107]  The Plaintiffs evidence also shows that the supervisors required the Plaintiffs to knock on a specific number of doors and obtain a certain number of orders each day.[108]  Thus, the Plaintiffs' evidence shows a genuine issue of material fact exists about the extent that Just Energy controlled the Plaintiffs' work schedule.

Additionally, the Plaintiffs' evidence shows that Just Energy required them to report to the office every morning and prevented them from working independently.  While Just Energy says that the Plaintiffs "were absolutely allowed to travel and work independently,"[109] the Plaintiffs' evidence shows that Just Energy required them to report to the office each morning at a specific time.  Fitzpatrick, Hill, White, Black, Scott, and Hurt all say that Just Energy required them to report to the office in the morning and sign-in.[110]  Hurt says that Pizazza became upset with her when she did not report to the office by 9 a.m.[111]

Moreover, Hurt and Hill both say they could not work independently without a supervisor's permission.  Specifically, Hurt says that Piazza became upset with her, and they had a "heated conversation" after she worked alone without his permission.[112]  Hill says that he asked Piazza if he

---

[105]/Doc. 82-4 at 5.

[106]/Doc. 82-2 at 5.

[107]/Doc. 80-7 at 22.

[108]/*See, e.g.*, Docs. 80-5 at 15; 80-6 at 10; 80-6 at 14; 80-7 at 23; 80-9 at 21.

[109]/Doc. 80-1 at 16.

[110]/Docs. 80-5 at 12; 80-6 at 22-23; 80-7 at 24, 29; 80-8 at 12; 80-9 at 30; 82-2 at 8; 82-5 at 6; 82-6 at 5, 13.

[111]/Doc. 82-6 at 13.

[112]/*Id.* at 12.

-15-

Case No. 1:12-CV-00758
Gwin, J.

could go out on his own, but Piazza refused his request and required him to report to the office because he was not "marketing enough."[113] Thus, the Plaintiffs' evidence shows a genuine issue of material fact exists about the extent that Just Energy required the Plaintiffs to report to the office every morning and prevented the Plaintiffs from working independently.

The Plaintiffs' evidence also shows that Just Energy assigned them to sales routes each day and controlled the Plaintiffs' break time.  Richard Early, Just Energy's Vice President of Human Resources, says, "So my understanding is they're not directed to any location.  They can go wherever they wish to market."[114]  But, Hurt, Fitzpatrick, Hill, White, and Black all say that Just Energy supervisors assigned them to a specific van, crew, and route each morning.[115]  For example, Black says that "They made a list where we go.  Wait for them to tell us where we go and . . . what van you're riding in."[116]

Moreover, the Plaintiffs evidence shows that Just Energy supervisors controlled the Plaintiffs' break time.[117]  For example, Fitzpatrick says "I asked [Piazza] like what time could we take breaks, or is there a time we take breaks?  He said no."[118]  Hill says Piazza told him "'I told you not to take any breaks. You know, you got to keep knocking on doors.'"[119]  Thus, the Plaintiffs' evidence shows a genuine issue of material fact exists about whether Just Energy assigned the Plaintiffs to sales routes each day and controlled the Plaintiffs' break time.

The Plaintiffs evidence also shows that Just Energy required them to purchase and wear Just

---

[113]/Doc. 80-6 at 35.

[114]/Doc. 82-3 at 9.

[115]/Docs. 80-4 at 40; 80-5 at 16, 17; 80-6 at 24; 80-7 at 36; 80-8 at 25; 80-8 at 39.

[116]/Doc. 80-8 at 25.

[117]/Docs. 80-5 at 19; 80-4 at 4; Doc. 80-6 at 45.

[118]/Dos. 80-5 at 19.

[119]/Doc. 80-6 at 45.

Case No. 1:12-CV-00758
Gwin, J.

Energy branded clothing even though the regulations did not require Just Energy to do so.  Richard Teixeira, a Just Energy 30(b)(6) representative, says, "There's no requirement that says an independent contractor has to purchase clothing."[120]  And neither Ohio law[121] nor the PUCO agreement[122] say that Just Energy must require its workers to wear Just Energy branded clothing. Yet, Hurt, Fitzpatrick, Hill, White, Black, and Scott all say that a Just Energy supervisor required them to purchase and wear Just Energy branded clothing.[123]  For example, Hill says if "you didn't wear [Just Energy branded clothing], then . . . They would give it to you and take it out of your check."[124]  He also says that Piazza told him "you'll be fired" for not wearing a Just Energy branded shirt and hat.[125]  Thus, the Plaintiffs evidence shows a genuine issue of material fact exists about whether Just Energy required the Plaintiffs to purchase and wear Just Energy branded clothing.

Considering all the external indicia together, and reviewing the evidence in a light most favorable to the Plaintiffs, the Court finds that the Plaintiffs' evidence shows a genuine issue of material fact exists whether the Plaintiffs bear the external indicia of outside salesman.  While the Court has found that the Plaintiffs exhibit certain indicia of outside salesman, the Plaintiffs' evidence shows that Just Energy did not hire the Plaintiffs for their sales experience—and most importantly—Just Energy exhibited *extraordinary* supervision and control over the Plaintiffs.

Unlike the pharmaceutical representatives in *Christopher* that "were subject to  subject to only  minimal  supervision,"[126] the  Plaintiffs  evidence  shows  that  Just  Energy  supervisors:

---

[120]Doc. 82-10 at 4.

[121]Ohio Admin. Code 4901:1-29-06 says "(d) Uniform . . . Each door-to-door solicitor must display a valid photo identification of the approved retail natural gas supplier or governmental aggregator he/she represents."

[122]Doc. 80-12.

[123]Docs. 80-4 at 38-39; 80-5 at 7-9; 80-6 at 22; 80-7 at 32; 80-8 at 33; 80-9 at 31; 82-5 at 6.

[124]Doc. 82-5 at 6.

[125]*Id.*

[126]*Christopher*, 132 S. Ct. at 2164.

-17-

Case No. 1:12-CV-00758
Gwin, J.

(1) controlled the length of the Plaintiffs' work week and work day; (2) required the Plaintiffs to

knock on a specific number of doors and obtain a certain number of orders; (3) required the Plaintiffs

to report to the office every morning; (4) prevented the Plaintiffs from working independently; (5)

determined the Plaintiffs sales routes; (6) controlled the Plaintiffs' break time; and (7) required the

Plaintiffs to purchase and wear Just Energy branded clothing.[127]  Because "how an employee spends

his time is a question of fact,"[128] the Court finds that a genuine issue of material fact exists about

whether the Plaintiffs bear the external indicia of outside salesman.


*C.  FLSA's Purpose*

        The purpose of FLSA's outside salesman exemption further supports the Court's conclusion

that Just Energy should not receive summary judgement.   According to the Sixth Circuit,

"[a]pplication of the exemption is limited to those circumstances plainly and unmistakably within

the exemption's terms *and spirit*."[129]   The Supreme Court has said that the outside sales exemption

"is premised on the belief that exempt employees 'typically earned salaries well above the minimum

wage' and enjoyed other benefits that "se[t] them apart from the nonexempt workers entitled to

overtime pay.'"[130]  "It was also thought that exempt employees performed a kind of work that 'was

difficult to standardize to any time frame and could not be easily spread to other workers after 40

hours in a week, making compliance with the overtime provisions difficult and generally precluding

the potential job expansion intended by the FLSA's time-and-a-half overtime premium.'"[131]

---

[127]*See supra* notes 102-125.

[128]*See supra* note 31.

[129]*See Douglas v. Argo-Tech Corp.*, 113 F.3d 67, 70 (6th Cir. 1997) (citing  *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960) (emphasis added).

[130]*Christopher,  132 S. Ct. at 2173* (citing Preamble 22124).

[131]*Id.*

Case No. 1:12-CV-00758
Gwin, J.

In *Christopher*, the Supreme Court held that pharmaceutical sales representatives fell within the purpose of FLSA's outside salesman exemption.[132] There, the Court found that the representatives earned "an average of more than $70,000 per year and spent between 10 and 20 hours outside normal business hours each week performing work related" sales tasks.[133] Thus, it concluded that the representatives were "hardly the kind of employees that the FLSA was intended to protect."[134] The Court also determined that compensating the representatives for overtime would be difficult because their jobs were structured in a manner fundamentally incompatible with hourly pay.[135] Because the representatives were highly compensated, and because their jobs were incompatible with hourly pay, the Court held that the representatives fell within the purpose of FLSA's outside salesman exemption.[136]

Here, the Plaintiffs' evidence shows that a genuine issue of material fact exists about whether the Plaintiffs fit within the purpose of FLSA's outside sales exemption.  First, unlike the pharmaceutical representatives in *Christopher*, the Plaintiffs' evidence shows that they failed to earn salaries averaging $70,000 per year.[137] Just Energy says that the Plaintiffs had the "capacity and ability to earn far in excess of the minimum wage."[138] But the Plaintiffs' evidence shows that in certain weeks, they failed to earn *any* money.[139] For example, White says he "worked over 150 hours for [Just Energy] during the two weeks" he was there, yet Just Energy paid him "Nothing."[140]

---

[132] *Id.*
[133] *Id.*
[134] *Id.*
[135] *Id.*
[136] *Id.*
[137] *See* Doc. 82 at 27.
[138] Doc. 83 at 18.
[139] *Id.*
[140] Doc. 82-11 at 11.

Case No. 1:12-CV-00758
Gwin, J.

Moreover, the pay records of Hurt and Hill show that they regularly made below minimum wage.[141]
Thus, a  genuine issue of material fact exists about the Plaintiffs' compensation.

Second, the Court finds that a genuine issue of material fact exists about whether Plaintiffs' jobs are conducive to hourly pay.  According to Just Energy, the Plaintiffs are like the sales representatives in *Christopher*—free from supervision, able to work independently, and not required to punch a clock—which makes their job fundamentally incompatible with hourly pay.[142]  Yet according to the Plaintiffs, Just Energy supervisors required them to report to the Just Energy office each morning and sign-in, controlled the length of their work week and work day, determined when they took breaks, and decided where they worked.[143]  Unlike the pharmaceutical representatives in *Christopher*, here there is no evidence that the Plaintiffs must complete significant administrative work in addition to their door-to-door duties.  The Plaintiffs' evidence shows that their jobs are compatible with hourly pay.

Just Energy has also failed to show that it gave the Plaintiffs benefits that would differentiate them from nonexempt workers entitled to overtime pay.  Thus, the Plaintiffs' evidence shows that a genuine issue of material fact exists about whether they fit within the purpose of FLSA's outside sales exemption.  Consequently, the Court denies Just Energy's motion for summary judgement because the Court finds that the Plaintiffs are not exempt outside salesman as a matter of law.

D.  *Statute of Limitations*

Just Energy says that Plaintiff Black's Ohio overtime and FLSA claims are untimely.[144]

---

[141]/Docs. 82-13; 82-14 (assuming Hurt and Hill worked six days a week for twelve hours a day).

[142]/*See supra* note 87.

[143]/*See supra* notes 81-103.

[144]/Doc. 80-1 at 32.

Case No. 1:12-CV-00758
Gwin, J.

Generally, FLSA claims are governed by a two-year statute of limitations.[145/]  But such claims may be governed by a three-year statute of limitations where the statutory violation was "willful."[146/]  In contrast, Ohio law provides for a two-year statute of limitations for claims based upon unpaid overtime compensation, but does not provide for an extension in the case of a willful violation by the employer.  Accordingly, a plaintiff's state law claims may be barred even though his federal claims are not.[147/]

Under federal law, to establish willfulness, the Plaintiffs must demonstrate that Just Energy either *knew* or showed *reckless disregard* for whether its conduct violated the FLSA.[148/]  Department of Labor regulations say, "an employer's conduct shall be deemed *knowing* . . . if the employer received advice from a responsible official of the Wage and Hour Division to the effect that the conduct in question is not lawful."[149/]  An "employer's conduct shall be deemed to be in *reckless disregard* of the requirements of the Act . . . if the employer should have inquired further into whether its conduct was in compliance with the Act, and failed to make adequate further inquiry."[150/]

For example, in *Herman v. Palo Group Foster Home, Inc.*, the Sixth Circuit found that an employer's violation was willful where the employer "'had actual notice of the requirements of the FLSA by virtue of earlier violations, his agreement to pay unpaid overtime wages, and his assurance of future compliance with the FLSA.'"[151/]

---

[145/]*See* 29 U.S.C. § 255(a).

[146/]*Id.*

[147/]*Claeys v. Gandalf, Ltd.*, 303 F. Supp. 2d 890, 892-93 (S.D. Ohio 2004).

[148/]*See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988) (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 (1985)) (emphasis added).

[149/]29 C.F.R. § 578.3(c)(2) (emphasis added).

[150/]29 C.F.R. § 578.3(c)(3) (emphasis added).

[151/]183 F.3d 468, 474 (6th Cir. 1999) (quoting *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 967 (6th Cir. 1991)) (citing *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1062 (2d Cir. 1988)).

Case No. 1:12-CV-00758
Gwin, J.

First, Black has failed to raise a genuine a genuine issue of material fact showing that his Ohio overtime claim falls within the applicable two-year statute of limitations.  Just Energy says that Just Energy Marketing employed Black for one month, from December 2009 until January 2010.[152] But, Black did not opt-in to this action until June 11, 2012, more than two years later.[153]  And Black fails to offer evidence to the contrary.  Thus, the Court grants summary judgement to Just Energy and finds that Black's overtime claim under the Ohio Wage Act is barred by its statute of limitations.

Second, Black's evidence sufficiently supports a finding that Just Energy made a willful or reckless violation of FLSA because Just Energy had notice that it had improperly classified its workers as independent contractors.  The Sixth Circuit has instructed courts to distinguish between independent contractors and employees by focusing on "whether, as a matter of economic reality, the worker is economically dependent upon the alleged employer or is instead in business for himself."[154]  Among other factors, this economic reality test often turns on the "degree of control exercised by the alleged employer."[155]  Similarly, whether an employee is exempt as an outside salesman can turn on the degree of control exercised by the employer.[156]

Here, Black's evidence shows that Just Energy should have inquired further about whether it was in compliance with FLSA because it was on notice that it had improperly classified workers as independent contractors.  On September 21, 2007, the Unemployment Division of the New York Department of Labor told Just Energy that certain of its door-to-door solicitors were "employees,"

---

[152]/Doc. 80-1 at 33.

[153]/*Id.*

[154]/*Solis v. Laurelbrook Sanitarium & Sch., Inc.*, 642 F.3d 518, 523 (6th Cir. 2011) (quotations marks omitted).

[155]/*Id.*

[156]/*See, e.g., Christopher*, 132 S. Ct. at 2159 ("Petitioners were not required to punch a clock or report their hours, and they were subject to only minimal supervision.").

Case No. 1:12-CV-00758
Gwin, J.

not "independent contractors."[157/] Thus, like the employer in *Herman*, as early as September 2007,
Just Energy was on notice that it was improperly classifying Black and his coworkers as independent
contractors.

Moreover, because Just Energy had actual notice that it had improperly classified its door-to-
door workers as independent contractors, it should have inquired further about whether its workers
were also exempt as outside salesman.  The legal test that controls these determinations largely turns
on the same factors: the extent of control exercised by the employer.  Because Just Energy has not
shown that it made further inquiry, Black's evidence shows that Just Energy recklessly disregarded
FLSA's requirements.  Therefore, the Court denies summary judgement to Just Energy on Black's
FLSA claim.

## IV. Conclusion

For the reasons above, the Court **GRANTS IN PART** and **DENIES IN PART** Just Energy's
motion for summary judgement.

IT IS SO ORDERED.

Dated: August 15, 2013                                  s/         *James S. Gwin*
                                                       JAMES S. GWIN
                                                       UNITED STATES DISTRICT JUDGE

---

[157/]Doc. 82 at 29.

-23-