# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| DAVINA HURT, Individually and on behalf of others similarly situated, et al<br><br>        Plaintiffs,<br><br>v.<br><br>COMMERCE ENERGY, INC., et al<br><br>        Defendants, | Case No.: 1:12-CV-00758<br><br>Judge James S. Gwin<br><br><br>**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR DECERTIFICATION** |

Patrick J. Perotti, Esq. (#0005481)
Nicole T. Fiorelli, Esq. (#0079204)
Frank A. Bartela, Esq. (#0088128)
Kristen M. Kraus, Esq. (#0073899)
Richard N. Selby, Esq. (#0059996)
**DWORKEN & BERNSTEIN CO., L.P.A.**
60 South Park Place
Painesville, Ohio 44077
(440) 352-3391     (440) 352-3469 Fax
Email:  *pperotti@dworkenlaw.com*
      *nfiorelli@dworkenlaw.com*
      *fbartela@dworkenlaw.com*
      *kmkraus@dworkenlaw.com*
      *rselby@dworkenlaw.com*


Murray Richelson, Esq. [0021112]
**David A. Katz Co. LPA**
50 Public Square
Suite 842, Terminal Tower
Cleveland, Ohio 44113
(216) 696-5250     (216) 696-5256 Fax
Email:  *mrichelson@aol.com*

Jim DeRoche, (#0055613)
**GARSON & JOHNSON LLC**
101 West Prospect Avenue, Suite #1610
Midland Building
Cleveland, OH 44115
(216) 830-1000     (216) 696-8558Fax
Email:  *jderoche@garson.com*

## Table of Contents

I.  Introduction ..................................................................................................................1

II.  Law and Argument ......................................................................................................2

    A.  Standard of Review ...........................................................................................2

        1.  FLSA Collective Action .............................................................................2

        2.  Rule 23 .......................................................................................................3

    B.  The OFMWSA Allows an Opt-Out Overtime Wage Class ...................................3

    C.  Liability is proper for class and collective action treatment ....................................6

    D.  Differences in class members' damages does not provide a basis for
    decertification ...................................................................................................13

        1.  Representative evidence is specifically approved by the U.S.
        Supreme Court to support damages in class cases ............................................13

        2.  Plaintiffs' representative evidence, specifically the surveys
        challenged by the defense, may be used to support damages .........................17

    E.  No Other Considerations Justifies Decertification ...............................................19

III.  Conclusion .................................................................................................................20

# Table of Authorities

## Cases

*Alcantar v. Hobart Serv.*, 2013 U.S. Dist. LEXIS 6752 (C.D. Cal. 2013) ................................................ 18

*Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680 (1946) ............................................................. Passim

*Bank of Utah v. Commercial Sec. Bank*, 369 F.2d 19 (10th Cir. 1966) ......................................... 19

*Beliz v. W.H. McLeod & Sons Packing Co.*, 765 F.2d 1317 (5th Cir. 1985) .............................. 14

*Berger v. Cleveland Clinic Found.*, 2007 U.S. Dist. LEXIS 76593 (N.D. Ohio 2007) ................................ 2

*Brock v. Norman's Country Mkt., Inc.*, 835 F.2d 823 (11th Cir. 1988) ....................................... 14

*Brunswick Corp. v. Spinit Reel Co.*, 832 F.2d 513 (10th Cir 1987) ............................................. 19

*Comcast Corp. v. Behrend,* 133 S. Ct. 1426, 185 L. Ed. 2d 515 (2013) ..................................... 5, 6

*Crawford v. Lexington-Fayette Urban County Gov't,* 2007 U.S. Dist. LEXIS 6711 (E.D. Ky. 2007) ............................................................................................................................................ 17

*Davis v. Soc. Serv. Coordinators*, 2012 U.S. Dist. LEXIS 122315 (E.D. Cal. 2012) ................................ 11

*Dept. of Labor v. Cole Enter., Inc.*, 62 F.3d 775 (6th Cir. 1995) ................................................ 14

*Enea v. Bloomberg, L.P.*, 2014 U.S. Dist. LEXIS 35613 (S.D.N.Y. 2014) ................................ 12

*Enriquez v. Cherry Hill Mkt. Corp.*, 2013 U.S. Dist. LEXIS 141284 (E.D.N.Y. 2013) ......................... 12

*Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770 (7th Cir. 2013) ....................................... 15, 16

*Greene v. Ab Coaster Holdings, Inc.*, 2010 U.S. Dist. Lexis 91671 (S.D. Ohio 2010) ............................... 4

*Guifi Li v. A Perfect Day Franchise, Inc.*, 2012 U.S. Dist. LEXIS 83677 (N.D. Cal. 2012) ..................... 17

*In re Joint E. & S. Dist Asbestos Lit.*, 52 F.3d 1124 (2d Cir. 1995) .......................................... 18

*Johnson v. Big Lots Stores, Inc.*, 2008 U.S. Dist. Lexis 35316 (E.D. La. 2008) ................................. 17, 19

*Jones v. Nat'l Council of YMCA*, 2013 U.S. Dist. LEXIS 129236 (N.D. Ill. 2013) ................................. 18

*Kurgan v. Chiro One Wellness Ctrs. LLC*, 2014 U.S. Dist. LEXIS 20255 (N.D. Ill. 2014) ..................... 13

*LaFleur v. Dollar Tree Stores, Inc.*, Case No. 2:12-cv-00363 (E.D. Va. 2014) ......................... 12

*Laichev v. JBM, Inc.*, 269 F.R.D. 633 (S.D. Ohio 2008) ............................................................ 4

*Martin v. Selker Bros., Inc.*, 949 F.2d 1286 (3rd Cir. 1991) ...................................................... 14

*Martin v. Tony and Susan Alamo Found.*, 952 F.2d 1050 (8th Cir. 1992) ................................... 14

*McCluskey v. J.P. McHale Pest Mgmt.*, 147 Fed. Appx. 203 (2nd Cir. 2005).............................. 12

*McLaughlin v. Ho Fat Seto*, 850 F.2d 586 (9th Cir. 1988) ......................................................... 14

*Nolan v. Nolan*,11 Ohio St.3d 1, 462 N.E.2d 410 (1984) ........................................................... 4

*O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567 (6th Cir. 2009).................................... 2

*Petersen v. The Cleveland Institute of Art*, 2011 U.S. Dist. LEXIS 156783 (N.D. Ohio, Mar. 31, 2011) ....................................................................................................................................... 5

*Ralston v. Chrysler Credit Corp.*, 1999 Ohio App. LEXIS 4550 (6th Dist. 1999)...................... 3

*Reich v. S. Md. Hosp., Inc.*, 43 F.3d 949 (4th Cir. 1995) ........................................................... 14

*Sec'y of Labor v. DeSisto*, 929 F.2d 789 (1st Cir. 1991) ............................................................. 14

*Snide v. Disc. Drug Mart*, Inc., 2011 U.S. Dist. LEXIS 133736 (N.D. Ohio 2011)..................... 2

*Solis v. Laurelbrook Sanitorium & Sch., Inc.*, 642 F.3d 518 (6th Cir. 2011).............................. 10

*Thompson v. Bruister & Assocs.*, 967 F. Supp. 2d 1204 (M.D. Tenn. 2013).............................. 15

*Trepel v. Roadway Exp., Inc.*, 194 F.3d 708 (6th Cir. 1999) ...................................................... 19

*Union Carbide Corp. v. Ever-Ready Inc.*, 531 F.2d 366 (7th Cir.), cert. denied, 429 U.S. 830, 97 S. Ct. 91, 50 L. Ed. 2d 94 (1976) ............................................................................................ 19

*Valdez v. Ward*, 219 F.3d 1222 (11th Cir. 2000) ....................................................................... 18

*Wal-Mart Stores, Inc. v. Dukes, et al.*, 131 S. Ct. 2541 (2011) ................................................. 13

*Williams v. Countrywide Home Loans, Inc.*, 6th Dist. No. L-06-1120, 2007-Ohio-5353............. 3

*Youngblood v. Family Dollar Stores, Inc.*, 2011 U.S. Dist. LEXIS 115389, (S.D.N.Y. Oct. 4, 2011) ....................................................................................................................................... 11

## Statutes

R.C. §4111.03 ...................................................................................................................... 4, 5

R.C. §4111.10 ......................................................................................................................... 4

R.C. §4111.14 ......................................................................................................................... 4

## Rules

Federal Evid. R. 807(a) ......................................................................................................... 18

Rule 23 ........................................................................................................................... Passim

### I.  <u>Introduction</u>

Just Energy seeks to decertify both the Ohio Rule 23 class and the multi-state FLSA class. A motion for decertification under Rule 23 is essentially a motion for reconsideration of class certification, as the court revisits all of the Rule 23 factors in its analysis.  Just Energy has presented no new arguments that would warrant reversing this Court's finding on class certification. It has referred to the same arguments already rejected by this Court.  The same is true for the FLSA collective action. Just Energy has presented no significant disparate factual or legal issues among the opt-in Plaintiffs to preclude proceeding collectively – which is the most judicially efficient way for these approximate 2000 individuals to litigate their claims.

Liability can be determined on a class-wide basis. Based on uniform, corporate-level policies regarding, inter alia, advertising positions, hiring, supervising, training, compensation, and Just Energy's ability to reject customer applications, this Court denied Just Energy's motion for summary judgment. This Court did not need to make individual determinations for each Plaintiff. The jury does not either, and can decide whether Plaintiffs were exempt employees based on the uniform evidence presented.

Damages can also be determined on a class-wide basis. Using representative evidence – which Plaintiffs will present at trial – is a well-established mechanism for proving damages in class wage and hour cases. Under Just Energy's arguments, no wage and hour case would ever be certified, and the remedial protections of these laws and their express provisions allowing employees to join together and proceed as a group would be eviscerated. Just Energy's motion should be denied.

## II.   Law and Argument

### A.  Standard of review

#### 1.  FLSA Collective Action

The Sixth Circuit has adopted a two-stage certification process; with the first stage resulting in conditional certification if the plaintiff makes a "modest factual showing" that his position is similar to those held by the other class members. *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 584 (6th Cir. 2009). The second stage occurs post-discovery, and review is more stringent because a court has "more information on which to base its decision and makes a factual determination on the similarly situated question." In previously certifying this case as a collective action, this Court reviewed Plaintiffs' motion under a hybrid standard because the parties had conducted some discovery. Doc. #88, p. 14.

Certification remains proper because discovery has revealed no (1) disparate factual and employment settings of the individual plaintiffs; (2) defenses that would be individual to each plaintiff; or (3) fairness and procedural considerations that would warrant decertification. See *Berger v. Cleveland Clinic Found.*, 2007 U.S. Dist. LEXIS 76593, at *61 (N.D. Ohio 2007)(identifying these factors to consider at second stage analysis). Indeed, "even at the decertification stage, similarly situated does not mean identically situated."  *Snide v. Disc. Drug Mart*, Inc., 2011 U.S. Dist. LEXIS 133736, at *7 (N.D. Ohio 2011). "Plaintiffs may also meet the similarly situated requirement if they demonstrate, at a minimum, that "their claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Id* quoting *O'Brien* at *585.

Significantly, the Sixth Circuit has stated that courts should not apply the more stringent criteria for class certification under Rule 23. *O'Brien* at 584. However, as this Court previously

found Rule 23 certification appropriate – and there is no reason to revisit this finding – the similarly situated standard under the FLSA has been met.

### 2.  Rule 23

In looking at decertification in a regular Rule 23 class, defendants typically raise new facts which merit reconsideration of the Rule 23 requirements and whether they are satisfied. See *Ralston v. Chrysler Credit Corp*., 1999 Ohio App. LEXIS 4550 (6th Dist. 1999) (on a motion for decertification, court revisited whether the requirements of adequacy, typically, and predominance requirements were met). There are no such new facts here. Instead, depositions of opt-in and Rule 23 Plaintiffs have demonstrated the consistency of Plaintiffs' original claims.

Just as in FLSA cases, the decision to certify or decertify a Rule 23 class is reviewed for an abuse of discretion.  *Williams v. Countrywide Home Loans, Inc*., 6th Dist. No. L-06-1120, 2007-Ohio-5353, at ¶16.

### B.  The OFMWSA Allows an Opt-Out Overtime Wage Class

This Court has already rejected Just Energy's rehashed argument (see Doc. #53, Page ID# 989-992) that an opt-out class for the Ohio overtime claims is improper:

> the Ohio Legislature limited the Ohio Minimum Wage Act's opt-in requirement to *minimum wage* claims not *overtime* claims.  And here, the Plaintiffs limited their Rule 23 class to *overtime* violations. While Just Energy cites to two cases [referencing *Williams* and *Dillworth*] to support its incompatibility argument, those cases were vacated on reconsideration.  Because the Ohio Minimum Wage Act's opt-in requirement does not apply to overtime violations, the Plaintiff's overtime claims are compatible with Rule 23's opt-out procedure. The Plaintiffs may seek a Rule 23 class action for overtime violations under the Ohio Minimum Wage Act.

Doc #88, Page ID#4583.

Under the law of the case doctrine, parties cannot re-litigate issues already adjudicated. "The decision of a reviewing court in a case remains the law of that case on the legal questions

involved for all subsequent proceedings in the case at both the trial and reviewing levels." *Nolan v. Nolan*,11 Ohio St.3d 1, 3, 462 N.E.2d 410 (1984); see also *Greene v. Ab Coaster Holdings, Inc.,* 2010 U.S. Dist. Lexis 91671, at *5 (S.D. Ohio 2010)("a court should be loathe to revisit its own prior decision or that of a coordinate court unless the initial decision was clearly erroneous and would produce manifest injustice.") There is no reason to revisit this issue.

Just Energy argues that "§4111.14(K) specifically applies to alleged violations of *either* Section 34a of Article II of the Ohio Constitution, *or any law or regulation implementing it provisions.*" The OMFWSA is a law *implementing* Section 34a of Article II." (emphasis sic). Doc. #695-1, PageID #: 7731. Just Energy essentially argues that the any violation of any part of the entire OMFSA if brought on behalf of a class must be "opt-in."

But, as explained previously in the class certification briefing, the statutory language is specifically linked *only* to implementing Ohio voters' amendment of Article 2, Section 34(a) of the Ohio Constitution. R.C. §4111.14(K). This constitutional amendment specifically provides for an increase in minimum wage and additional enforcement rights. Neither R.C. §4111.14 nor the constitutional amendment mention anything about overtime. See *Laichev v. JBM, Inc.*, 269 F.R.D. 633, 635 (S.D. Ohio 2008)("based upon the language of the statute, §4111.14 only applies to actions brought under that section of the code, which is limited to implementing Section 34 of Article II, Ohio Constitution.") The overtime provisions, §4111.03 and §4111.10, likewise say nothing about the applicability of the opt-in provision. Id. at 636 ("the drafters of the OMFWSA knew how to limit a civil action to an opt-in class and must have then specifically choose not to do so in drafting O.R.C. §4111.10.") This Court's decision is therefore supported by the plain language of the constitutional and statutory provisions, and the case law. Id. at 635 ("Plaintiff may maintain a class action for violations of §4111.10 under Fed. R. Civ. P. 23"); see

also *Petersen v. The Cleveland Institute of Art,* 2011 U.S. Dist. LEXIS 156783 (N.D. Ohio, Mar. 31, 2011)(certifying Ohio wage and hour rule 23 class).

Contrary to Just Energy's assertions, *Comcast Corp. v. Behrend,* 133 S. Ct. 1426, 1433, 185 L. Ed. 2d 515 (2013) does not require this Court to reverse itself. Just Energy argues that "the Supreme Court reversed a Rule 23(b)(3) class certification because the damages model proposed by the plaintiffs did not match their theory of liability … Here, too, Plaintiffs' damages model (based on an assertion of minimum wage) does not match their liability theory (based on overtime)." This is wrong because Plaintiffs are not making a minimum wage claim; they are seeking only unpaid overtime for hours worked over 40 per week.

Just Energy wants to redefine Plaintiffs' overtime claim to one for minimum wages because the overtime statute provides that a worker must receive at least 1.5 times minimum wage for hours worked over 40. See R.C. 4111.03 ("[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's *wage rate* for hours worked in excess of forty hours in one workweek…"(Emphasis added); R.C. 4111.02 (defining wage rate as "not less than the wage rate specified in Section 34a of Article II, Ohio Constitution [which provides for the minimum wage].") But the mention of "wage rate" in the overtime statute, in so far as it sets forth the threshold rate by which the 1.5 multiplier should apply to hours worked over 40, does not alter Plaintiffs' claims to include anything other than unpaid overtime for hours worked over 40 in any given week. Plaintiffs' damages model is consistent with their overtime claims: Plaintiffs will determine the wage rate to apply for the overtime calculation by using Defendant's pay data records to determine a Plaintiff's total pay for any given week and dividing that total pay by the number of hours worked in that week. If that rate is less than minimum wage, the *overtime* statute requires the 1.5 multiplier to be based on minimum wage; Plaintiffs

5

need not have a claim under the minimum wage statute to assert these damages. There is no disconnect between Plaintiffs' liability theory (claim for overtime) and damages model (based off the plain language in the overtime statute), and the requirements under *Comcast* are satisfied.

### C.  Liability is proper for class and collective action treatment.

Just Energy argues that determining whether each class member is entitled to overtime will require an individual analysis.  This Court has already rejected that argument, stating:

> Here, the Plaintiffs' evidence shows that answers to the degree of control question are common to the class. In *Wal-Mart Stores, Inc. v. Dukes*, the Supreme Court said that a plaintiff satisfies Rule 23's commonality requirement by showing that his employer had a uniform practice that violated the law.[38] Just Energy says that its company policies for its door-to-door workers are consistent "with independent contractors performing exempt outside sales work." Further, it says that the Plaintiffs have failed to show that Just Energy subjected its workers outside the Beachwood, Ohio offices to practices that violate the Ohio Wage Act.
>
> But Just Energy's own documents support the Plaintiffs' claim that Just Energy subjected *all* its Ohio door-to-door workers to a level of supervision that was arguably inconsistent with exempt, independent contractors. Specifically, Just Energy's Ohio training manuals say that the door-to-door workers "will be dropped off by the Crew Coordinator at the location you will be working in for the day." They also say that the door-to-door workers "begin[] their day . . with a meeting at the office before going on the road for the day." This evidence contradicts Just Energy's statements that it allowed its door-to-door workers to choose the hours and the neighborhoods that they worked. Thus, because the Plaintiffs have identified state-wide policies that a jury could find are inconsistent with exempt, independent contractors, the Court finds that the proposed class satisfies the commonality requirement.

Order and Opinion, Doc. #88, Page ID #4586-87; *Id.* at Page ID#4595-96 ("Just Energy's training manuals … give support for the Plaintiffs' claims that Just Energy has violated the FLSA in each of the states where Commerce Energy uses door-to-door workers.")

If there are so many "individual issues," how was this Court able to rule on summary judgment? In finding it cannot be concluded as a matter of law that Plaintiffs were outside salesmen, this Court looked at evidence that is common to all Plaintiffs: their compensation structure, level of supervision, training, experience, control of hours by Just Energy, and Just

Energy's discretion to reject signed applications. See Order and Opinion, Doc. #89, Page ID #4612-4616. These uniform facts are all relevant to the key inquiries as to whether the outside sales exemption has been satisfied.

First, as this Court previously noted, in determining whether Plaintiffs "made sales," Just Energy's own uniform documents are key: "Just Energy prevented the Plaintiffs from completing a sale by retaining unlimited discretion to accept and reject the orders obtained by the Plaintiffs." Id., Page ID#4608 citing Just Energy's New Customer User Guide and Regional Distributor Agreement.  Just Energy does not dispute this paperwork is the same for each worker.

Second, to satisfy the exemption, Just Energy must prove that Plaintiffs bear "external indicia" of salesman, which requires consideration of "whether the employees: (1) receive commission compensation, (2) receive specialized sales training, (3) must solicit new business, (4) were hired for their sales experience, and (5) were directly supervised." Id., Page ID #4610. The evidence here is also uniform. All Plaintiffs were paid commission and no sales experience was necessary for the job. The level of training Plaintiffs received is outlined in Just Energy's uniform documentation. See e.g. Teixeira Ex. 15—Ohio Orientation Manual (Doc. #82-10). The question of supervision, besides representative Plaintiff testimony and survey evidence, is demonstrated through the uniform documentation and corporate testimony – which applies to all Plaintiffs.  All workers must comply with detailed marketing scripts, see e.g. JE000356-JE000359—Sample Ohio Script (Doc. #82-3). They are all required to "begin[] their day in the late morning with a meeting at the office before going on the road". *See* Teixeira Ex. 15—Ohio Orientation Manual, JE000472)(Doc. #82-10). Plaintiffs were all prohibited from "engag[ing] in outside employment that competes with the business interests of the Company and/or diverts significant time or attention away from [their] work with the Company [.]" (Early Ex. 58—JEG's

Code of Business Conduct and Ethics Policy) (emphasis added)(Doc. #82-3). Plaintiffs uniformly all were not allowed to follow-up with a potential customer after the application was signed. See Teixeira Dep. 215-216 (Registration Agents provide paperwork, fill out application, get customer signature, begin verification call, leave the premises, and are then finished with the transaction)(Doc. #82-10); see also JE000499 (Just Energy Orientation Manual states there was no client contact, no follow-ups, and no additional paperwork that could be completed to achieve the consummation of any "sale")(Doc. #82-10). Plaintiffs were all required to comply with all Just Energy rules, policies, and procedures within Just Energy's orientation manuals, compliance matrices, and Code of Business Conduct and Ethics Policy (Teixeira Ex. 15—Ohio Orientation Manual, JE000307-JE000519; Sample Just Energy Compliance Matrix, JE000342-JE000345; Energy's Code of Business Conduct and Ethics Policy, Early Ex. 58). (Doc.#s 82-10 & 82-3). Violation of these rules subjects the class members all to discipline, up to and including termination. (*See, e.g.*, JE000953) (Doc. #82-3) ("To protect the Company's good name, the Company may discipline and/or terminate its relationship or affiliation with any Representative who breaches this Code or related policies").

Finally, this Court explained that the spirit of the exemption must also be met:

The purpose of FLSA's outside salesman exemption further supports the Court's conclusion that Just Energy should not receive summary judgment. According to the Sixth Circuit, "[a]pplication of the exemption is limited to those circumstances plainly and unmistakably within the exemption's terms *and spirit*." The Supreme Court has said that the outside sales exemption "is premised on the belief that exempt employees 'typically earned salaries well above the minimum wage' and enjoyed other benefits that "se[t] them apart from the nonexempt workers entitled to overtime pay.'" "It was also thought that exempt employees performed a kind of work that 'was difficult to standardize to any time frame and could not be easily spread to other workers after 40 hours in a week, making compliance with the overtime provisions difficult and generally precluding the potential job expansion intended by the FLSA's time-and-a-half overtime premium.

Order and Opinion, Doc. #88, Page ID #4616 (internal citations omitted)

Again, rather than the 'individual issues' claimed by defense counsel, these factors are all demonstrated by common evidence. Whether Plaintiffs typically earned salaries above minimum wage is shown through the workers' average pay,[1] and there is no dispute that the workers received no benefits. Whether the workers performed work that is difficult to standardize to a 40 hour workweek is not an individual issue. Just Energy has not denied this, and as this Court noted, "here there is no evidence that the Plaintiffs must complete significant administrative work in addition to their door-to-door duties. The Plaintiffs' evidence shows that their jobs are compatible with hourly pay." Id., Page ID #4618.

The exemption question is not an individual issue. Indeed, Just Energy's *own* expert noted that the materials he was provided by Just Energy showed uniformity in practices that would allow a class wide determination on this exact issue:

> Q: Is it your opinion that the uniformity of conduct and requirements by Just Energy as it pertains to these workers suggests that the workers should uniformly be characterized as salespersons? Yes or no?
> A: My opinion is that given the roles and responsibilities and duties as I viewed them of these salespeople and the consistency of those roles, responsibilities, and duties, that they would be classified as a salesperson in my mind.
> Q: So they -- that determination could be made by you with respect to all the members of the class; is that correct?
> A: Based on the information that I've read, yes.

Ahearne Depo. pp. 77-78.

Regarding the independent contractor analysis, Just Energy's other primary defense, the same common evidence noted above equally addresses the factors relevant to that matter, which include "the degree of control exercised by the alleged employer, the extent of the relative investments of the worker and the alleged employer, the degree to which the worker's opportunity for profit or loss is determined by the alleged employer, the skill and initiative

---

[1] Plaintiffs have such information from Defendants' pay records.

required in performing the job, and the permanency of the relationship." *Solis v. Laurelbrook Sanitorium & Sch., Inc.,* 642 F.3d 518, 523 (6th Cir. 2011)(quoting *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008).

Finally, determining whether a three year statute of limitation and/or liquidated damages apply under the FLSA—that is, did Just Energy act without good faith/in willful disregard of the wage and hour laws—looks again to the testimony of Defendants' corporate representatives. The record on this has not changed from the time of this Court's earlier ruling.  The fact finder can reasonably conclude that Just Energy ignored the proper classification of Plaintiffs, despite key decisions adverse to Just Energy issued on that matter.  Plaintiffs' Brief in Opposition to Summary Judgment, Doc # 82, Page ID #25-30.  There is no individual evidence here.

As determined by this Court in its prior decisions, the key questions – outside sales, independent contractor, willful/lack of good faith actions by Just Energy – are all subject to class wide proof. Contrary to Just Energy's arguments, the key evidence has not changed since class certification briefing. That makes sense, because as noted above, the bulk of the evidence is provided not by the Plaintiffs, but by corporate documentation and testimony.[2]

Likewise, Just Energy's complaint about *minor* "individual issues" does not disturb this uniformity and does not change the fact that common questions *predominate*. For instance, Just Energy argues that some Plaintiffs had 'other job titles.'   However, those workers, including Plaintiffs Black and Scott, called "crew coordinators", performed the same door-to-door work as all of the other putative class members and were subject to the same uniform policies, limits and restrictions. (Teixeira dep. 170-171)(Doc. #82-10). As this Court previously found:

---

[2] The deposition testimony remains in line with this documentation, as well as the original deposition testimony provided by the plaintiffs who opted in before the class certification decision.

the Plaintiffs' evidence shows that the Plaintiffs and the purported class share the same roles and responsibilities: going door-to-door soliciting customers for Just Energy's services. While Just Energy says that job duties varied for certain Plaintiffs who worked as "crew coordinators," those differences are not of such a magnitude as to cause individual issues to predominate. Thus, the Court finds that the predominance requirement is satisfied.

Order and Opinion, Doc. #88, Page ID #4590-4591.

The same applies to Just Energy's reliance on the testimony that crew coordinators drove the van and one of them became a regional distributor.   See Chappie Tr. 60-61, 99-100, 111-112; Bazar Tr. 12-13, 48-50 (Ex. 10).  Just Energy fails to provide their testimony about their day to day duties, roles, and responsibilities as the door to door workers. See Chappie Tr. 36:5-15 ("A. Oh, it was mandatory to go to doors on certain days, absolutely. Q. Even as—as a regional? A. Even as a regional--. Q. Okay. A. Yes."); Bazar Tr. 22: 20-24 (she "always knocked on doors" even after she was called Crew Coordinator)[3]

Just Energy fails to realize that courts have routinely explained there are always some differences among class members' duties, but those do not defeat certification.  See e.g. *Davis v. Soc. Serv. Coordinators*, 2012 U.S. Dist. LEXIS 122315, at *58 (E.D. Cal. 2012) ("The Court is not convinced that differences in some duties among putative class members who were primarily engaged in contacting SSC's members/clients, such as differences in the type of programs marketed to SSC's members, geographical locations of employees, differences in supervision, or differing quotas, are the types of distinctions that preclude notice at this stage."); *Youngblood v. Family Dollar Stores, Inc.*, 2011 U.S. Dist. LEXIS 115389, (S.D.N.Y. Oct. 4, 2011) ("Where, as here, there is evidence that the duties of the job are largely defined by comprehensive corporate procedures and policies, district courts have routinely certified classes of employees challenging

---

[3] Deposition excerpts referenced herein not provided by Just Energy are attached hereto as Exhibits.

11

their classification as exempt, despite arguments about 'individualized' differences in job responsibilities.").

Finally, Just Energy argues that some workers characterize their responsibilities differently.  Just Energy complains that John Davis, a Rule 23 class member who did not opt into the lawsuit, characterizes himself as an independent contractor.  Doc # 695-1, Page ID # 7740; John Davis Trans. 11, 17; and Davis with one other Rule 23 class member calls their work sales.  Doc # 695-1, Page ID # 7740, citing Davis Tr. 19-20, 27; Coleman Tr. 17-18, 50.  Just Energy cites to no case law giving deference to a worker's own characterization of their position under the FLSA.  Titles are irrelevant; it is the workers' characteristics and job duties which determine whether they are exempt. *McCluskey v. J.P. McHale Pest Mgmt.,* 147 Fed. Appx. 203, 206 (2nd Cir. 2005)("In deciding whether an employee is an outside salesperson, the Court must look beyond labels and descriptions and also inquire into particular facts of actual work performed.")

Here, the relevant evidence is uniform. Common questions of liability predominate. Thus, Rule 23 and the less demanding "similarly situated" standard are both satisfied. Affirming certification accords with this Court's earlier ruling, and with other wage and hour cases.  Just Energy has provided no basis for this Court to reverse itself. See e.g. *LaFleur v. Dollar Tree Stores, Inc*., Case No. 2:12-cv-00363 (E.D. Va. 2014)(denying motion for decertification finding the same corporate policies were implemented in a similar fashion throughout all of its stores allowing a determination by common evidence); *Enea v. Bloomberg, L.P.*, 2014 U.S. Dist. LEXIS 35613, at *20 (S.D.N.Y. 2014) (holding that defendant's exemption arguments would "appl[y] equally against all potential class members"); *Enriquez v. Cherry Hill Mkt. Corp.*, 2013 U.S. Dist. LEXIS 141284, at *11 (E.D.N.Y. 2013) ("misclassification of employees as exempt is appropriate for classwide resolution as long as there is adequate evidence that the class members'

12

jobs "were similar in ways material to the establishment of exemption criteria."); *Kurgan v. Chiro One Wellness Ctrs. LLC*, 2014 U.S. Dist. LEXIS 20255, at *22-23 (N.D. Ill. 2014)("Although Plaintiffs' claims may raise individualized questions regarding the number of hours worked and how much each employee was entitled to be paid, those differences go to the damages each employee is owed, not to the common question of [Defendant's] liability.")

### D.  Differences in class members' damages does not provide a basis for decertification.

#### 1.  Representative evidence is specifically approved by the U.S. Supreme Court to support damages in class cases.

Regarding individual damages, this Court has already rejected Just Energy's argument:

> The Plaintiffs concede that the damages element varies within the class, and that individual class members will need to prove the damages they suffered.  But the Sixth Circuit has said that "[n]o matter how individualized the issue of damages may be, these issues may be reserved for individual treatment with the question of liability tried as a class action."

Doc #88, Page ID #4586 quoting *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988).

Having failed that effort, Just Energy recycles its complaint that this case uses a prohibited "Trial by Formula," contrary to *Wal-Mart Stores, Inc. v. Dukes, et al.*, 131 S. Ct. 2541, 2551 (2011). Def. Br. at 7. *Dukes* was considered in this Court's grant of certification, which rejected Just Energy's claims and found that Just Energy's own corporate documents support the existence of commonality here.  Order & Opinion, Doc. 88, Page ID 4586-87.

Moreover, the Supreme Court, in *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680 (1946), specifically considered wage and hour claims brought under Rule 23 and the FLSA.  In *Mt. Clemens,* the Supreme Court addressed the failure of an employer to keep "proper and accurate" records reflecting the hours worked by a plaintiff worker:

> [t]he solution … is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act. In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.

*Mt. Clemens*, 328 U.S. at 687.

The current decertification effort ignores both that law and the Supreme Court's warning that when the employer has failed to keep proper and accurate records, they cannot "complain that the damages lack the exactness and precision of measurement that would be possible had [they] kept records in accordance with the requirements of § 11 (c) of the [FLSA]." Id. at 687-88. The Sixth Circuit cases mirror the standard set by the Court in *Mt. Clemens*, holding that damages in FLSA overtime cases can be proved with testimony from a representative group of plaintiff workers. *See Dept. of Labor v. Cole Enter., Inc.,* 62 F.3d 775, 781 (6th Cir. 1995)("The testimony of fairly representative employees may be the basis for an award of back wages to nontestifying employees."). So have the majority of circuits. See e.g. *Reich v. S. Md. Hosp., Inc.*, 43 F.3d 949, 951 (4th Cir. 1995); *Martin v. Tony and Susan Alamo Found.*, 952 F.2d 1050, 1052 (8th Cir. 1992); *Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1297 (3rd Cir. 1991); *Sec'y of Labor v. DeSisto*, 929 F.2d 789, 792 (1st Cir. 1991); *McLaughlin v. Ho Fat Seto*, 850 F.2d 586, 589 (9th Cir. 1988); *Brock v. Norman's Country Mkt., Inc.*, 835 F.2d 823, 828 (11th Cir. 1988); *Beliz v. W.H. McLeod & Sons Packing Co.*, 765 F.2d 1317, 1331 (5th Cir. 1985).

Just Energy complains that the *methodology* used by Plaintiffs and their expert is not proper because there are insufficient company records to draw reasonable conclusions.  Oddly, Just Energy's own witness used those same records to render his projections and ratios on

14

calculating damages in amounts less than Plaintiffs' expert Dr. Fox. Equally troubling is Just Energy's effort to avoid liability for violation of federal law, by pointing to its failure to keep the records required by federal law.

Just Energy relies on *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 773 (7th Cir. 2013), for the position that individualized inquiries regarding damages in a wage and hour case mean that this matter cannot be addressed as a class action. But that court itself, while finding issues based on the particulars of plaintiffs' evidence, re-affirmed *Mt. Clemens* stating "[t]he unreported time for each employee could be reconstructed from memory, inferred from the particulars of the jobs the technicians did, or estimated in other ways—any method that enables the trier of fact to draw a 'just and reasonable inference' concerning the amount of time the employee had worked would suffice." *Id.* at 775. And other courts have noted the limiting scope of this decision, based on the facts:

> In the abstract, *Espenscheid* could conceivably be read as an overall indictment of utilizing a collective `action as a vehicle to establish liability in piece-rate cases, but the Court does not read the case so broadly because the Seventh Circuit was presented with little choice but to hold as it did, given the lack of cooperation by plaintiffs' counsel in explaining how they intended to prove up their case. In the trial court, "[t]he judge asked the plaintiffs' lawyer to propose a specific plan for litigating the case within the framework she established," and "[t]he plaintiffs responded rather truculently by opposing bifurcation and subclasses and refusing to suggest a feasible alternative, including a feasible method of determining damages." Instead, they "[e]ssentially asked the district judge to embark on a shapeless, freewheeling trial that would combine liability and damages and would be virtually evidence-free so far as damages were concerned. Further, while plaintiff sought to use "representative" testimony of 42 technicians, "[c]lass counsel [did] not explain in his briefs, and was unable to explain to [the appellate panel] at oral argument though pressed repeatedly, how these 'representatives' were chosen - whether for example they were volunteers or perhaps selected by class counsel after extensive interviews and hand picked to magnify the damages sought by the class.

*Thompson v. Bruister & Assocs.*, 967 F. Supp. 2d 1204, 1216 (M.D. Tenn. 2013).

*Mt. Clemons* expects class counsel to take reasonable efforts to overcome lack of records of hours worked.  Just Energy does not claim that class counsel did otherwise.  EVERY class member providing an email was surveyed.  EVERY survey response was produced and used to make damage projections

Explaining the proposed damage calculation, and the methodology behind the representative testimony, alleviates the problem the court found in *Espenscheid*.  Id. at 1217. Here, unlike in *Espenscheid*, the Plaintiffs are cooperative and have advanced a model for determining damages. See Supplemental Expert Report of Dr. Fox (Doc. #706). Plaintiffs will show that the weeks worked and the average hours per week worked by Plaintiffs are supported by "just and reasonable" inference through: their expert, who has calculated this number based on survey evidence which polled class members on this issue; Just Energy's records for each class member of their registration date and applications submitted; and Just Energy's records of the pay received.  Id. at pp. 3-7.   Plaintiffs will further support that the claimed weeks and hours are "reasonable" by live representative testimony from Plaintiffs, corporate testimony, and documentation regarding expectations of the workers.[4] The weeks and hours of work are calculated for each individual along with their own respective pay data to determine damages. Id. pp. 13-25. Further, should the Court find it proper to bifurcate the trial into two phases – liability and damages – Plaintiffs would agree.

---

[4] The parties agreed to only use witnesses at trial who were deposed. Just Energy complains that the number of live witnesses Plaintiffs will present will not be representative, but this argument is without merit. First, the parties *agreed* to this number of witnesses. It is also notable that, knowing the class size, the Court limited the depositions to 25 hours. Finally, the Plaintiffs' case will not be proved by only live representative testimony of plaintiff workers, but also by corporate testimony, corporate documentation, survey responses, and expert opinion. Taken as a whole, this evidence will provide the ultimate trier of fact with the necessary factual information upon which they may decide Just Energy's liability and damages owed to the plaintiff workers.

> **2. Plaintiffs' representative evidence, specifically the surveys challenged by the defense, may be used to support damages.**

Next, Defendants argue that survey evidence cannot be used to calculate damages. This ignores several cases which have found that survey results are commonly used by courts in wage and hour litigation.

For instance, in *Guifi Li v. A Perfect Day Franchise, Inc.*, 2012 U.S. Dist. LEXIS 83677 at *40 (N.D. Cal. 2012), where the defendant did not possess records of the time worked by plaintiff workers, survey results constituted evidence to be relied on by the court of the actual time worked by such individuals. Specifically, the plaintiffs "conducted a survey by which a randomly selected subset of class members were surveyed" and from this survey the plaintiffs' "expert was able to estimate the unpaid minimum wage owed to the surveyed employees[.]" *Id*. From this analysis, the court then made a determination, based on the representative evidence gained, of the amount in damages for each class member. *Id*.

Just Energy argues in the alternative that even if surveys are allowed, ***these*** surveys can't be used because they are not properly worded and taken in a representative manner.  Just Energy complains that the conclusions drawn from the surveys should therefore not be admitted.  The law is otherwise.  In *Johnson v. Big Lots Stores, Inc.*, 2008 U.S. Dist. LEXIS 35316 (E.D. La. 2008), plaintiff workers sought to admit the results of a survey of such plaintiff workers and the expert opinion that followed. The court in *Johnson* found the survey admissible noting that "technical inadequacies in a survey, such as the format of the question or the manner in which the survey was taken, do not affect admissibility, but rather bear on the weight that the factfinder, in this case the Court, should accord the data." *Id.* at 1055, n. 10. See also *Crawford v. Lexington-Fayette Urban County Gov't,* 2007 U.S. Dist. LEXIS 6711 (E.D. Ky. 2007) (admitting plaintiff's survey responses to support motion for class certification); *Alcantar v. Hobart Serv*.,

17

2013 U.S. Dist. LEXIS 6752 (C.D. Cal. 2013)(denying motion to exclude plaintiffs' survey evidence gathered to identify quantity of meal and rest breaks not given to establish damages).

Just Energy also argues that Plaintiffs cannot rely on survey evidence because the survey responses given by certain individual plaintiffs did not match their deposition testimony to the letter. But Just Energy failed to properly track the time worked by the plaintiff workers. Per *Mt. Clemens*, they cannot now complain about lack of exactness. It is up to the jury what weight it gives the survey responses in light of other testimony.

Just Energy further argues against the surveys contending that Dr. Fox's testimony is unreliable; however to do so they rely on their *own expert*, Ali Saad, Motion Decert. Doc. #695-1, Page ID #7738. Which expert should be relied on is a matter for the fact finder at trial.   See e.g., *Valdez v. Ward*, 219 F.3d 1222, 1238 (11th Cir. 2000) (determination of whose expert's "testimony at trial was more credible was an issue solely within the province of the jury"); *In re Joint E. & S. Dist Asbestos Lit.*, 52 F.3d 1124, 1135 (2d Cir. 1995) ("Trial courts should not abrogate the jury's role in evaluating the evidence and the credibility of expert witnesses by simply choosing sides in the battle of the experts"); *Jones v. Nat'l Council of YMCA*, 2013 U.S. Dist. LEXIS 129236, at *45-46 (N.D. Ill. 2013) (it is not for the court to decide which expert is reliable in a battle of dueling experts).

Just Energy also maintains that Plaintiffs' survey responses are unreliable and inadmissible hearsay.  This contention is without merit.  Federal Evid. R. 807(a) provides that evidence ordinarily classified as hearsay is still admissible where "(1) the statement has equivalent circumstantial guarantees of trustworthiness; (2) it is offered as evidence of a material fact; (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and (4) admitting it will best serve the purposes

18

of these rules and the interests of justice." The tendency of courts is to "admit the results of properly conducted surveys for whatever they are worth in spite of the hearsay difficulty." *Bank of Utah v. Commercial Sec. Bank*, 369 F.2d 19, 27 (10th Cir. 1966).

Courts have explained that "[s]urvey evidence may be admitted as an exception to the hearsay rule if the survey is material, more probative on the issue than other evidence and if it has guarantees of trustworthiness." *Brunswick Corp. v. Spinit Reel Co*., 832 F.2d 513 (10th Cir 1987)**;** *Union Carbide Corp. v. Ever-Ready Inc*., 531 F.2d 366 (7th Cir.), cert. denied, 429 U.S. 830, 97 S. Ct. 91, 50 L. Ed. 2d 94 (1976) (admitting surveys taken by an expert on the issue of likelihood of confusion between Ever-Ready and Carbide products).

Further, the survey responses were a basis for the report of Plaintiff's expert, Dr. Fox. Courts have repeatedly reasoned that an expert report can be based on varying types of data and evidence, and is not limited to information which would ordinarily be admissible in court. See *Trepel v. Roadway Exp., Inc.,* 194 F.3d 708, 717 (6th Cir 1999) (noting that Rule 703 has been interpreted to allow hearsay into evidence to establish the basis for an expert's opinion); *Johnson v. Big Lots Stores, Inc*., 2008 U.S. Dist. Lexis 35316 (E.D. La. 2008) (finding that expert in a wage and hour class action could base his opinion on survey responses).

### E.  No Other Consideration Justifies Decertification

Just Energy argues that it would be unfair and a violation of its due process rights for this action to proceed on a class basis because it will be precluded from asserting individualized defenses. It argues that the proof to be used at trial will not represent the class. Just Energy also maintains that no proper damage award can be calculated here because most of the class members worked no overtime. Each of these arguments has already been properly rejected.

Finally, Just Energy contends that it would be improper to award damages to individuals who worked as outside salesman or independent contractors. Whether the class members were

independent contractors or outside salesman exempt from the FLSA is precisely the issue for trial.  This Court has already determined that Just Energy cannot prove that the outside salesman exemption applies as a matter of law, stating:

> Taking the evidence in the light most favorable to the Plaintiffs, Just Energy fails to show, as a matter of law, that the Plaintiffs "made sales."
>
> ***
>
> Here, neither Ohio law nor the PUCO agreement require Just Energy to retain unlimited rejection authority. And Just Energy has failed to provide evidence showing that this right to reject contracts was necessary to comply with regulations or the PUCO agreement. Just Energy has not shown that it accepts agreements that comply with the applicable regulations. The contracts the Plaintiffs bring to Just Energy are merely proposals until Just Energy accepts them. Therefore, because Just Energy retains an unlimited right of rejection, the Plaintiffs are more like the student salesman in *Wirtz* and the military recruiters in *Serco* whose employers retained discretion to accept and reject their orders." Order and Opinion, Doc. #89, Page ID #4608-4609.
>
> ***
>
> The Court's conclusion that Just Energy is not entitled to summary judgment is further supported by the Plaintiffs' evidence that shows a genuine issue of material fact exists about whether the Plaintiffs bear the "external indicia" of outside salesman.81/ Courts have articulated "external indicta" that are probative of an employee's status as an outside salesman. Among these factors, courts may consider whether the employees: (1) receive commission compensation;82/ (2) receive specialized sales training;83/ (3) must solicit new business;84/ (4) were hired for their sales experience;85/ and (5) were directly supervised.86/ None of the indicia of sales-relatedness can be considered in isolation.

Order and Opinion, Doc. #89, Page ID # 4610.

### III.  <u>Conclusion</u>

Therefore, Plaintiffs respectfully request that this Court deny Defendants' motion for decertification.

Respectfully submitted,

<u>/s/ Frank A. Bartela</u>
Patrick J. Perotti, Esq. (#0005481)
Nicole T. Fiorelli, Esq. (#0079204)

Frank A. Bartela, Esq. (#0088128)
Kristen M. Kraus, Esq. (#0073899)
Richard N. Selby, Esq. (#0059996)
**DWORKEN & BERNSTEIN CO., L.P.A.**
60 South Park Place
Painesville, Ohio 44077
(440) 352-3391    (440) 352-3469 Fax
Email:  *pperotti@dworkenlaw.com*
         *nfiorelli@dworkenlaw.com*
         *fbartela@dworkenlaw.com*
         *kmkraus@dworkenlaw.com*
         *rselby@dworkenlaw.com*


Murray Richelson, Esq. [0021112]
**David A. Katz Co. LPA**
50 Public Square
Suite 842, Terminal Tower
Cleveland, Ohio 44113
(216) 696-5250    (216) 696-5256 Fax
Email:  *mrichelson@aol.com*


Jim DeRoche, (#0055613)
**GARSON & JOHNSON LLC**
101 West Prospect Avenue, Suite #1610
Midland Building
Cleveland, OH 44115
(216) 830-1000    (216) 696-8558Fax
Email:  *jderoche@garson.com*


Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants today (July 2, 2014).

*/s/* Frank A. Bartela
**DWORKEN & BERNSTEIN CO., L.P.A.**

*Counsel for Plaintiff*

22