IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **DAVINA HURT,** *et al.* | ) | |
| | ) | Case No. 1:12-CV-00758 |
| Plaintiffs, | ) | |
| | ) | Judge James S. Gwin |
| vs. | ) | |
| | ) | **PLAINTIFFS' MEMORANDUM IN** |
| **COMMERCE ENERGY, INC.,** *et al.* | ) | **SUPPORT OF THEIR MOTION** *IN* |
| | ) | ***LIMINE* TO EXCLUDE DEFENDANT'S** |
| | ) | **EXPERT MICHAEL AHEARNE** |
| Defendants. | ) | |

Patrick J. Perotti, Esq. (#0005481)
Nicole T. Fiorelli, Esq. (#0079204)
Frank A. Bartela, Esq. (#0088128)
Kristen M. Kraus, Esq. (#0073899)
Richard N. Selby, Esq. (#0059996)
**DWORKEN & BERNSTEIN CO., L.P.A.**
60 South Park Place
Painesville, Ohio 44077
(440) 352-3391     (440) 352-3469 Fax
Email:  *pperotti@dworkenlaw.com*
        *nfiorelli@dworkenlaw.com*
        *fbartela@dworkenlaw.com*
        *kmkraus@dworkenlaw.com*
        *rselby@dworkenlaw.com*


Murray Richelson, Esq. (#0021112)
**David A. Katz Co. LPA**
50 Public Square
Suite 842, Terminal Tower
Cleveland, Ohio 44113
(216) 696-5250     (216) 696-5256 Fax
Email:  *mrichelson@aol.com*

Jim DeRoche, (#0055613)
**GARSON & JOHNSON LLC**
101 West Prospect Avenue, Suite #1610
Midland Building
Cleveland, OH 44115
(216) 830-1000    (216) 696-8558Fax
Email:  *jderoche@garson.com*

**Introduction**

This certified class action seeks recovery for Defendants' violations of the Fair Labor Standards Act and Ohio overtime law. To support their position at trial that the outside salesman exemption applies to defeat liability, Defendants filed an expert report from Michael Ahearne, opining that Plaintiffs were engaged primarily in "sales" as defined in his textbook.

However, there are well-established limits on when an expert witness may testify. Ahearne's proposed expert testimony violates each of those requirements and should not be entertained.

First, an expert may not testify on matters for which expert opinion is not permitted. *Killion v. KeHE Food Distribs., LLC*, 2013 U.S. Dist. LEXIS 146044 (N.D. Ohio 2013).  Expert testimony is not permitted on the issue of whether a worker is exempt under the FLSA's outside sales exemption. *Id*.   Ahearne's opinion that Plaintiffs are salesmen is therefore improper because it is the jury's job to decide what Plaintiffs job activities were, and then based on those factual findings apply the *law* – as given through the Court's jury instructions, not a textbook definition – to the requirements for exemption. See this Court's order denying Defendants summary judgment, Doc. #89 at 7-8 ("'[h]ow an employee spends his time is a question of fact, while the question of whether his activities fall within an exemption is a question of law.'")(citation omitted). Ahearne's opinion that the workers meet some industry or academic definition is not helpful in either of those two tasks.

Second, an expert opinion which uses a different standard than the one set by law for the pending matter is not proper. *Gaschler v. Scott County,* 963 F. Supp. 971, 981 (D. Kan. 1997) (the "court may exclude expert witness testimony which is based on an inapplicable standard of law"); see also *Carbo v. Chet Morrison Services, LLC,* No. 12-3007 Section: "J" (4), 2013 U.S.

1

Dist. LEXIS 152979, at *4-5; *Bennett v. Real Property Services Corp.,* 66 F. Supp.2d 607, 613 (D.N.J. 1999). Ahearne admits his definition of 'sales' is not tied to the standard for outside sales under the FLSA.  Ahearne only addresses whether he believes the workers are engaged in "personal selling" as defined in his textbook. That opinion is not helpful to the jury and will only serve to create confusion since he would be providing testimony that conflicts with jury instructions.

Accordingly, Ahearne's testimony is improper and should be stricken.

## Law and Analysis

### A.  Standard of Review

Whether expert testimony is admissible is reviewed under Fed. R. Evid. 702:

"[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify" if the witness's testimony is "based upon sufficient facts or data, . . . is the product of reliable principles and methods, and the witness has applied the principles and methods reliably to the facts of the case."  See e.g. *Chem. Solvents, Inc. v. Advantage Eng'g, Inc*., 2011 U.S. Dist. Lexis 41378 (N.D. Ohio 2011) (applying Fed. R. Evid. 702 in deciding whether to strike an expert report).

"[U]nder *Daubert* and its progeny, a party proffering expert testimony must show by a preponderance of proof that the expert whose testimony is being offered is qualified and will testify to scientific knowledge that will assist the trier of fact in understanding and disposing of relevant issues." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 478 (6th Cir. 2008); *Accord Nall v. City of Painesville*, 2012 U.S. Dist. LEXIS 66123, at *5 (N.D. Ohio 2012), citing *Pride v. BIC Corporation*, 218 F.3d 566, 578 (6th Cir.2000).  Experts may not offer opinions regarding statutory interpretation or applicability.  *Van Houten-Maynard v. Anr Pipeline Company*, 1995 U.S. Dist. LEXIS 6751 (N.D. Ill. 1995) ("It is well settled that decisions regarding questions, interpretation, and explanation of applicable law are the province of the court.").

2

Equally important, experts are not permitted to usurp the role of the jury by constructing a factual narrative based on other evidence that the jury is more than capable of understanding. *Highland Capital Mgmt., L.P. v. Schneider*, 379 F.Supp.2d 461, 469 (S.D.N.Y.2005) ("An expert cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence."); *see also United States v. Mulder*, 273 F.3d 91, 101 (2d Cir.2001) (a "district court should not admit testimony that is 'directed solely to lay matters which a jury is capable of understanding and deciding without the expert's help.'"). Experts may not simply aggregate the facts purportedly shown by other evidence and then advocate for particular inferences from that evidence. *Highland Capital*, 379 F.Supp.2d at 469 ("Whatever expertise O'Shea may possess, no expert may 'supplant the role of counsel in making argument at trial, and the role of the jury [in] interpreting the evidence'"; quoting *Primavera Familienstifung v. Askin,* 130 F.Supp.2d 450, 529 (S.D.N.Y.2001)).

## B. Ahearne's Testimony is Not Outside of the Jury's Own Knowledge.

Courts have imposed a "helpfulness" requirement on expert testimony. In *Bison Pipeline, LLC v. 102.84 Acres of Land*, 732 F.3d 1215, 1222 (10th Cir. 2013), the court stated "the 'touchstone' of admissibility [of expert testimony] is helpfulness to the trier of fact." *Werth v. Makita Elec. Works, Ltd.,* 950 F.2d 643, 648 (10th Cir. 1991). That means expert testimony must "be sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." (Internal citations and quotations omitted). "The helpfulness requirement of Rule 702 thus prohibits the use of expert testimony related to matters which are "obviously . . . within the common knowledge of jurors." *United States v. Lespier*, 725 F.3d 437 (4th Cir. 2013). "[E]xpert testimony is inadmissible when it addresses 'lay matters which a jury is capable of understanding

3

and deciding without the expert's help.'" *Highland Capital*, 379 F.Supp.2d at 468 (quoting *Andrews v. Metro N. Commuter R.R. Co.*, 882 F.2d 705, 708 (2d Cir.1989)).

For instance, in *Pfeiffer v. Lewis County,* 308 F. Supp. 2d 88 (N.D.N.Y. 2004), the plaintiff brought a claim under the Equal Pay Act.  She had both dispatch and limited correction officer duties and argued that she should be paid similarly to those employed in the full-time corrections officer positions.  She proffered an expert to testify that her duties were the same as those in the full-time corrections officer position.  The defendant sought to exclude this expert testimony because comparison of the duties required of these two positions was within the common knowledge of the jury and did not require an expert.  *Id.* at 96.  The court agreed with the defendant holding "[t]here is nothing complicated about the evidence in this case such that it would be helpful to the trier of fact to have assistance from an 'expert.' *** The trier of fact is perfectly capable of reviewing the job descriptions and forming its own conclusions concerning the relative equality of the positions without help."  Id.

Likewise, Ahearne's testimony is not helpful because it applies only Ahearne's own definition of "personal selling," not the factors that the jury will be asked to apply in determining if the outside sale exemption applies.  Further, the jury does not need help understanding the evidence describing the workers' job activities.  Ahearne admits his report provides nothing that the jury will not have by way of the evidence.  Ahearne Report, Doc. # 688-1, Page ID # 7472.  Accordingly, Ahearne's testimony does not provide any information that is outside the jury's knowledge.

> **C. Ahearne's Expert Report Has No Relevance to Whether the Class Members Were Engaged in Sales, since He Admits His Opinions Use a Different Standard Than Required  by the FLSA.**

Trial judges are required to act as gatekeepers, limiting expert opinions only to relevant issues. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). Expert testimony is only relevant if it "assists the trier of fact in understanding the evidence or determining a fact in issue…" *Daniels v. FRB of Chi.*, 2005 U.S. Dist. LEXIS 47770, at *5 (N.D. Ill. 2005). *Accord Kendall Holdings, Ltd. v. Eden Cryogenics LLC*, 2013 U.S. Dist. LEXIS 136898, at *3 (N.D. Ohio 2013), *citing In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008). Whether the Plaintiffs' job duties fall under Ahearne's personal definition of sales from his own textbook is irrelevant in determining whether the Plaintiffs' activities constitute making sales as contemplated under the FLSA, a legal issue on which this Court will provide the jury instruction.

Ahearne has no knowledge of FLSA requirements. See Deposition of Michael Ahearne, p. 11 (herein "Ahearne Depo") attached hereto as Exhibit 1. Ahearne states he is rendering "an opinion as to whether their duties and responsibilities bear the indicia of sales and whether they are engaged in making 'sales,' as the term is used and understood in the sales industry." Ahearne Report, Doc. # 688-1, Page ID # 7471 (emphasis added); see also Ahearne Depo, p. 66.

Ahearne acknowledged that he did not try to determine, and did not consider, whether the factors he considered matched up with those relevant under FLSA and the interpretive regulations:

> **Q:**  Do you know how that you -- what you consider in the academic sense as a salesperson or selling, how that matches up with the standards under the Fair Labor Standards Act, whether or not a person is exempt from the wage and hour laws?
>
> **A:**  No. I have not studied fair wage labor laws.  I'm not an expert in that area. So that would be very difficult for me to address that question.  (Ahearne Depo. pp. 14-15).

In *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156 (2012), the court noted several characteristics that outside salesman typically possess, explaining:

> "That petitioners bear all of the external indicia of salesmen provides further support for our conclusion. Petitioners were hired for their sales experience. They were trained to close each sales call by obtaining the maximum commitment possible from the physician. They worked away from the office, with minimal supervision, and they were rewarded for their efforts with incentive compensation."

> ****

> Our holding also comports with the apparent purpose of the FLSA's exemption for outside salesmen. The exemption is premised on the belief that exempt employees "typically earned salaries well above the minimum wage" and enjoyed other benefits that "se[t] them apart from the nonexempt workers entitled to overtime pay." Preamble 22124. It was also thought that exempt employees performed a kind of work that "was difficult to standardize to any time frame and could not be easily spread to other workers after 40 hours in a week, making compliance with the overtime provisions difficult and generally precluding the potential job expansion intended by the FLSA's time-and-a-half overtime premium." Ibid. Petitioners-each of whom earned an average of more than $70,000 per year and spent between 10 and 20 hours outside normal business hours each week performing work related to his assigned portfolio of drugs in his assigned sales territory-are hardly the kind of employees that the FLSA was intended to protect. And it would be challenging, to say the least, for pharmaceutical companies to compensate detailers for overtime going forward without significantly changing the nature of that position." Id. at 2172-2173.

This Court has already adopted these criteria, explaining:

> "Courts have articulated "external indicta" that are probative of an employee's status as an outside salesman. Among these factors, courts may consider whether the employees: (1) receive commission compensation; (2) receive specialized sales training; (3) must solicit new business; (4) were hired for their sales experience; and (5) were directly supervised. None of the indicia of sales-relatedness can be considered in isolation." Order and Opinion, Doc. #89, Page ID #4610.

An expert 'opinion' based on standards that differ from the ones applicable to the pending case is not helpful. It is confusing and improper. Ahearne made it very clear his

academic view of whether the class members were engaged in sales is contradictory to the relevant criteria under the FLSA.

For example, *Christopher* and this Court noted that prior sales experience is relevant and indicative of the outside sales exemption.  But Ahearne's opinion, which acknowledges that Just Energy does not hire based on sales experience, (See Ahearne Depo. P. 58), uses the opposite standard indicating that hiring individuals without experience is preferable.  *See* Ahearne Report, p. 5.

Nor could this relevant *Christopher* factor be properly addressed by Ahearne in any event. He acknowledged that he was unaware if prior sales experience had any bearing on whether the outside salesman exemption applied – so how could his opinion be helpful on the matters at issue in this suit? (Ahearne Depo. pp. 75, 97).  He further acknowledged that he did not have background on the sales experience of Just Energy workers, save a few comments from depositions, to determine their typical level of experience or inexperience.  (Ahearne Depo. p. 73).  Ahearne therefore does not provide anything helpful to the jury: the jury instruction will inform the jury of the relevance of prior sales experience and the jury will hear the factual evidence to determine the experience level of the Plaintiffs.

*Christopher* and this Court also recognized that the level of supervision is important to determining the applicability of the outside sales exemption under the FLSA.  While in his deposition, Ahearne acknowledged that Defendant's actions plainly indicate supervision,[1] supervision was not discussed in his report or considered in rendering his opinion.

---

[1] When asked if having to report to the office every morning constituted employer supervision, Ahearne replied "Yeah, absolutely."  (Ahearne Depo. p. 38).  Ahearne stated that "almost all" workers had to report to the office every morning.  (Ahearne Depo. p. 45).  He acknowledged that being given a specific route by Defendants to work constituted employer supervision, and admitted that if Defendants controlled a worker's ability to take breaks, or when they would be

7

*Christopher* also found that outside salesmen typically earned salaries well above the minimum wage, but this factor was not given any consideration by Ahearne.

> **Q:** What was the average monthly earnings of workers -- of the registration agents who worked at least a month?
> **A:** I don't. I don't know the answer to that.  (Ahearne Depo. pp. 42-43).
>
> **Q:** And you don't know, just so we're clear, whether or not the registration agents typically earn salaries well above the minimum wage or not, correct?
> **A:** I don't know the exact compensation or average compensation.
> **Q:** Do you know anything about that?
> **A:** I do not.
> **Q:** Okay. So the answer is no, you don't know whether or not they earned well below the minimum wage on average? You do not know that?
> **A:** No. As I said previously, I'm not aware of that.  (Ahearne Depo. 59).
>
> **Q:** Do you know typical how much is paid?
> **A:** I don't know.  (Ahearne Depo. p. 83).

Ahearne was not even aware this was a relevant factor in determining if a worker is exempt under the outside salesman exemption of the FLSA.  (Ahearne Depo. pp. 97-98).

*Christopher* also found relevant whether the work was difficult to standardize and could not be easily spread to other workers after 40 hours in a week.  Again, these factors were not considered in Ahearne's report, [2] and he was unaware that they are a consideration in determining application of the FLSA outside salesman exemption.  (Ahearne Depo. p. 98).

The workers in *Christopher* spent many hours each week, outside of normal working hours, performing "sales tasks" related to their work developing their scripts and sales pitches, which this Court found was an important factor.  Order & Opinion, Doc. #89, Page ID # 4617-

---

taken, this would also constitute supervision.  (Ahearne Depo. pp. 39-40).  Ahearne stated that the requirements in the scripts could be considered mandatory and that there was no indication in the language of the scripts they were merely just a guide.  (Ahearne Depo. pp. 108-108).

[2] Perhaps because they weigh in favor of Plaintiffs. In his deposition, Ahearne described the worker's efforts as having many repetitive elements which could easily be picked up and completed by another employee when an individual reached 40 hours of work for the week. (Ahearne Depo. p. 60-61).

18. Ahearne never considered this factor, and at deposition acknowledged that he had no information on this factor, therefore, it was not considered in his analysis.  (Ahearne Depo. p. 62).

This Court, citing *Wirtz v. Keystone Readers Serv., Inc.*, 418 F.2d 249, 253 (5th Cir. 1969), also held that whether Just Energy had unfettered discretion to reject any of the workers' signed applications was relevant to the exemption analysis. Order & Opinion, Doc. #89, Page ID # 4607-09. But Ahearne admitted he cannot say whether this factor indicates the exemption. (Ahearne Depo. p 51).[3]

Another relevant factor in the exemption analysis is the underlying rationale for the exemption and who it is supposed to protect. Opinion & Order, Doc. #89, Page ID # 4616. But, again, Ahearne cannot help the jury on this issue:

> **Q:** Do you know what the purpose of the outside sales exemption is, why it exists?
>
> **\*\*\***
>
> **A:** No, I don't have no info.  (Ahearne Depo. p. 96).

In sum, whether the Plaintiffs were making "sales" as understood in the sales industry or academia is irrelevant to whether the Plaintiffs were  exempt salespersons as contemplated under the FLSA.  Ahearne's report should be stricken.

### D. Experts Cannot Provide Opinions on Legal Issues.

The Court will issue jury instructions on the appropriate legal standard for the outside sales exemption, and the jury will weigh the facts under *this* standard – not the one in Ahearne's irrelevant personal textbook.  Ahearne cannot opine about whether the exemption is satisfied – this is well-supported by the case law.

---

[3] Ahearne did testify at his deposition that Just Energy has a "wide ability to reject" a proposed contract. (Ahearne Depo. p. 49).

In *Killion v. KeHE Food Distribs., LLC*, 2013 U.S. Dist. LEXIS 146044 (N.D. Ohio 2013), the plaintiff submitted an expert report in her brief in opposition to the defendant's motion for summary judgment, opining that the plaintiff's job activities involved making "sales."  The court held this expert report was improper, reasoning:

> "This report runs afoul of the Sixth Circuit's guidance in *Berry v. City of Detroit,* 25 F.3d 1342, 1353 (6th Cir. 1994)*,* which permits experts to opine on and embrace factual issues, not legal ones. Here, there is little *factual* dispute at all -- indeed, the focus is whether Plaintiffs' daily activities amounted to making sales as defined by the FLSA. This legal question is one for which an expert opinion is both inappropriate and unhelpful." *Id.* at \*32.

In *Henry v. Quicken Loans, Inc*., 2009 U.S. Dist. LEXIS 90126, at \*19 (E.D. Mich. Sept. 30, 2009), the plaintiff group of mortgage brokers brought a FLSA claim for overtime compensation.  The defendant offered an expert report in which the expert sought to testify that the duties of the mortgage brokers were similar to other positions, which had been found exempt. The court explained that an expert report that addresses the ultimate issue in a FLSA case is improper, holding "[e]xpert testimony is not admissible if it does no more than tell the finder of fact what conclusions to reach."  *Id.* at \*19. That is what Ahearne attempts to do here – tell the jury that the class members were making sales, the ultimate issue in this case.

In *Perez v. Radioshack Corp*., 2005 U.S. Dist. LEXIS 36292, at \*\*9-10 (N.D. Ill. Dec. 13, 2005), the issue was whether the plaintiff's primary duty was management and thus exempt from FLSA.  The plaintiff submitted an expert report in which the expert considered the plaintiff's duties and opined that the employee's did not have management as their primary duty. Again, the court found the expert report impermissible, explaining:

> "Plaintiffs acknowledge, however, that "the key issue before the court is whether management is the primary duty of individuals employed by Radio Shack as 'Y' Store Managers." (*Id.* at 8.) Significantly, if management is not the "primary duty," Y store managers cannot be exempt executives and must receive overtime pay. The mere fact that Mr. Speer does not expressly state as much does not

preclude a finding that he has opined on that legal issue.  The court finds that much of Mr. Speer's August Report consists of improper legal conclusions that will determine the outcome of the case. *** He may not, however, testify as to his conclusion that Y store managers do not have management as their primary duty." *Id*. at *9.

The law does not permit Ahearne to testify.  He offers his personal view whether Plaintiffs were making sales based on his inferences from the evidentiary sources, and that is not permitted.  His testimony would only serve to confuse the jury as to whether *legally* the exemption applies.

## Conclusion

Defendants' expert report by Mr. Ahearne on whether Plaintiffs' work involves sales based on his definition of that term should be stricken since it is not relevant to whether the class members were exempt outside salespersons under the FLSA.  Ahearne considered none of the criteria for the outside salesman exemption in rendering his opinion. In *Killion v. KeHE Food Distribs., LLC*, a court in this district held that an expert may not be used to argue that a worker's job duties involve making "sales," which is precisely the purpose of Ahearne's expert report. Plaintiffs respectfully request that the Court issue an order striking Michael Ahearne's expert report and precluding his testimony.

Respectfully submitted,

*/s/ Patrick J. Perotti*

Patrick J. Perotti, Esq. (#0005481)
Nicole T. Fiorelli, Esq. (#0079204)
Frank A. Bartela, Esq. (#0088128)
Kristen M. Kraus, Esq. (#0073899)
Richard N. Selby, Esq. (#0059996)
**DWORKEN & BERNSTEIN CO., L.P.A.**
60 South Park Place
Painesville, Ohio 44077
(440) 352-3391    (440) 352-3469 Fax

11

Email:  *pperotti@dworkenlaw.com*
        *nfiorelli@dworkenlaw.com*
        *fbartela@dworkenlaw.com*
        *kmkraus@dworkenlaw.com*
        *rselby@dworkenlaw.com*

Murray Richelson, Esq. (#0021112)
**David A. Katz Co. LPA**
50 Public Square
Suite 842, Terminal Tower
Cleveland, Ohio 44113
(216) 696-5250     (216) 696-5256 Fax
Email:  *mrichelson@aol.com*

Jim DeRoche, (#0055613)
**GARSON & JOHNSON LLC**
101 West Prospect Avenue, Suite #1610
Midland Building
Cleveland, OH 44115
(216) 830-1000    (216) 696-8558Fax
Email:  *jderoche@garson.com*

Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants today (July 16, 2014).

  */s/ Patrick J. Perotti*
Patrick J. Perotti, Esq. (#0005481)
**DWORKEN & BERNSTEIN CO., L.P.A.**
 *Counsel for Plaintiff*

12