UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| DAVINA HURT, *et al.*, | : | CASE NO. 1:12-CV-00758 |
| Plaintiffs, | : | |
| vs. | : | OPINION & ORDER [Resolving Doc. 714] |
| COMMERCE ENERGY, INC, *et al.*, | : | |
| Defendants. | : | |

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

This is a case about minimum wage and overtime under the Fair Labor Standards Act [1/] and overtime under the Ohio Minimum Fair Wage Standards Act[2/]. Plaintiffs are door-to-door workers who solicited residential customers for the Defendants' energy services.

Plaintiffs move to exclude the testimony of Defendants' expert Dr. Michael Ahearne.[3/] Defendants oppose the motion.[4/] For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motion.

## I. Background

The Court has previously issued an opinion detailing the factual background of this case and incorporates that background by reference.[5/]

Defendants disclosed an expert report from Dr. Michael J. Ahearne, Ph.D.[6/] The report discusses whether the work performed by Plaintiffs constitutes "sales," and whether Plaintiffs' duties

---

[1/] 29 U.S.C. §§ 201–219.

[2/] Ohio Rev. Code §§ 4111.01–.03.

[3/] Doc. 714.

[4/] Doc. 716.

[5/] *See* Doc. 89 at 1–6.

[6/] Doc. 688.

and Defendants' processes indicate that the class members held "sales positions" as those terms would be understood in the direct sales industry.[7]

Plaintiffs say that Dr. Ahearne's testimony would not help the jury because Ahearne's definition of "sales" is inconsistent with the anticipated Court instruction. Plaintiffs say Ahearne's definition of "personal selling" differs from the legal standard for applying the outside salesman exemption under the FLSA.[8]

Defendants respond that Dr. Ahearne can provide background information about the sales industry that will provide context for the jury as it decides whether the Plaintiffs' positions bear the external indicia of outside salespeople.[9]

**II. Legal Standard**

Federal Rule of Evidence 702 controls the admission of expert testimony. Under Rule 702, testimony based on specialized knowledge is admissible if it "will help the trier of fact to understand the evidence or to determine a fact in issue."[10] Expert testimony must be relevant and expert testimony must be reliable.[11]

The expert's testimony must also be "based on sufficient facts or data," be "the product of reliable principles and methods,"and be the product of reliable application of those principles and methods to the facts of the case.[12] "[T]he law grants a district court the same broad latitude when [the district court] decides *how* to determine reliability as it enjoys in respect to its ultimate reliability

---

[7] *See generally id.*
[8] *See* Doc. 714.
[9] *See* Doc. 716.
[10] Fed. R. Evid. 702(a).
[11] *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).
[12] Fed. R. Evid. 702(b)-(d).

determination."[13] But to qualify as an expert witness, the expert must be qualified "by knowledge, skill, experience, training, or education."[14]

As commentators have noted, Rule 702 liberalized the admissibility of expert testimony from the earlier *Frye* standard.[15] Under this liberal approach, expert testimony is presumptively admissible.[16]

Further, experts need not confine their testimony to matters upon which they have personal knowledge.[17] Experts may base their opinions on facts and data "experts in the particular field would reasonably rely on . . . in forming an opinion on the subject."[18]

"Although an expert's opinion may 'embrace[] an ultimate issue to be decided by the trier of fact[,]' Fed. R. Evid. 704(a), the issue embraced must be a factual one."[19] But an expert may be able to give an opinion, even if he uses a term that has a legal meaning, unless that legal meaning has a "'separate, distinct, and specialized meaning in the law different from that present in the vernacular.'"[20] It is up to the Court to police this line, and the Court may, in its discretion, decide whether to admit or exclude testimony that arguably contains a legal conclusion.[21] The Court may also exclude testimony, even if relevant, if there is a substantial danger of confusing the issues or

---

[13] *Kumho Tire Co.*, 526 U.S. at 142.

[14] Fed. R. Evid. 702.

[15] *See, e.g.*, Weinstein's Federal Evidence § 702.02[1].

[16] *Id.*

[17] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993).

[18] Fed. R. Evid. 703.

[19] *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994).

[20] *United States v. Volkman*, 736 F.3d 1013, 1022 (6th Cir. 2013) (quoting *Torres v. Cnty. of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985))

[21] *Id.*

misleading the jury.[22]

## III. Analysis

Dr. Michael Ahearne is the C.T. Bauer Chair in Marketing at the University of Houston and is the Executive Director of the Sales Excellence Institute.[23] He holds a Ph.D. in marketing from Indiana University.[24] He was previously an Editor of the Journal of Personal Selling and Sales Management, and is the author of one of the leading textbooks in the field of professional selling.[25]

In this case, Dr. Ahearne provides an unexceptional opinion that Plaintiffs' "duties bear a number of indicia of sales positions in the direct sales industry . . . ."[26] He also gives an opinion that "the work performed by the plaintiffs . . . was aimed at making sales for [Defendants]."[27] Of course, noone disputes that Plaintiffs were part of Defendants' sales efforts.

This case turns on whether Defendant establishes an outside salesperson exemption. It does not turn on whether Plaintiffs made sales. The question is whether, in their sales efforts, Plaintiffs were sufficiently independent to qualify for the exemption.

Dr. Ahearne's report begins by describing how Defendants' hiring and training procedures are consistent with those used elsewhere in the sales industry. He says that Defendants' efforts in recruiting and selecting potential applicants for Plaintiffs' positions is consistent with other entry-level positions in the sales industry.[28] Specifically, he notes that many companies do not ask for prior sales experience as they prefer to train their own workers, and these companies often advertise

[22] Fed. R. Evid. 403.
[23] Doc. 688-2.
[24] *Id.*
[25] *Id.*
[26] Doc. 688-1 at 3.
[27] *Id.* at 4.
[28] *Id.* at 5–6.

potential earnings using an "average hourly wage" that indicates a variable, commissioned-based compensation plan.[29] Next, Dr. Ahearne says that the training given to Plaintiffs—including learning about the energy industry and Defendants' business, and being taught a sales process that is consistent with the process he teaches—indicates that Defendants prepared Plaintiffs for sales positions.[30]

Dr. Ahearne then explains how commissioned-based pay is often used to motivate salespeople. He says commission pay helps with sales positions because it is difficult to monitor sales effort.[31]

Finally, he describes how certain aspects of Plaintiffs' job duties are consistent with sales positions. He says that Plaintiffs' daily role-playing exercises are a common training method in the sales industry.[32] He says that sales scripts, such as those given to Plaintiffs by Defendants, are commonly used by salespeople as "guides."[33] He says that defining sales territories is often used to prevent duplicative, overlapping efforts by salespeople.[34] And finally, he says that the verification process used by Defendants is common in many companies when salespeople have discretion in identifying and engaging potential customers.[35]

Based on all of these factors, Dr. Ahearne concludes that Plaintiffs' jobs "bear[] all the indicia of . . . sales position[s], as would be recognized by sales academics . . . ."[36]

---

[29] *Id.*
[30] *Id.* at 6–8.
[31] *Id.* at 8–9.
[32] *Id.* at 9–10.
[33] *Id.* at 10–11.
[34] *Id.* at 11–12.
[35] *Id.* at 12–13.
[36] *Id.* at 14.

Plaintiffs raise three objections. First, they say it would not be helpful to the jury because the evidence describing Plaintiffs' job duties is within a lay person's knowledge.[37] Second, they say that Dr. Ahearne's opinion is irrelevant because he looks to different indicia of a sales position than what courts have determined to be relevant to the application of the outside salesperson exemption.[38] Third, they say that Dr. Ahearne is giving an improper legal conclusion on the ultimate issue in the case—whether Plaintiffs were making sales that qualify under the outside salesperson exemption.[39]

Dr. Ahearne's report skirts closely to giving legal conclusions. He gives an opinion the Plaintiffs had "sales positions" as he would define them in his position as an expert on sales. Although he does not say whether the outside salesperson exemption applies, he comments on a number of factors the law says are relevant to that analysis. In doing so, Dr. Ahearne risks confusing the jury by conflating the question of whether Plaintiffs made sales with the question of whether the exemption applies.

Many of the indicia discussed by Dr. Ahearne are the same as those used by courts when determining whether the outside salesperson exemption applies. Among the factors that courts consider are "whether the employees: (1) receive commission compensation; (2) receive specialized sales training; (3) must solicit new business; (4) were hired for their sales experience; and (5) were directly supervised."[40] In his report, Dr. Ahearne considers the compensation structure, the training Defendants gave Plaintiffs, Defendants' hiring criteria, and certain aspects of Defendants' supervision of Plaintiffs.

---

[37] Doc. 714-1 at 3–4.

[38] *Id.* at 4–9.

[39] *Id.* at 9–11.

[40] Doc. 89 at 12 (citations omitted).

Unless limited, Dr. Ahearne's opinion threatens to confuse the jury regarding factors the jury should consider when deciding whether Defendants have established the outside salesperson exemption. The jury will decide whether the exemption applies. It will not decide whether Plaintiffs were salespersons. Not all salespeople qualify for the outside salesperson exemption. Dr. Ahearne's testimony must be narrowed so as not to blur the two issues.

Although Plaintiffs are correct that most lay people have a general sense of what salespeople do, Dr. Ahearne may be able to assist the jurors regarding the general background of selling. But this limited help should not swallow the requirement that Ahearne's testimony not confuse the jurors to believe the Defendant establishes the exemption if the Defendant shows the Plaintiff were salespersons.

In giving his opinion, Dr. Ahearne situates the facts of this case within the bigger picture of the sales industry generally. He discusses common job duties of salespeople. And he discusses commonly accepted practices and procedures in the industry for training and monitoring salespeople.

Some of this background information could be useful to the jury. In particular, his testimony about the use of sales scripts, sales territories, and industry monitoring practices could help the jury evaluate the degree of control exerted by Defendants over Plaintiffs relative to other sales positions.

While testimony regarding other sales practices could be potentially helpful, Dr Aharne will not be permitted to use practices from other employers to imply that those employers qualify for the outside salesperson exemption.

**VI. Conclusion**

The Court finds that general background information provided by Dr. Ahearne about the sales process and the sales industry is therefore admissible. The Court will monitor and enforce this line

when Dr. Ahearne testifies to ensure that he is not impermissibly suggesting that merely engaging in sales is enough to trigger the exemption.

The Court also finds that Dr. Ahearne's opinions about whether Plaintiffs were engaged in "sales" in this case is potentially misleading and is therefore excluded. In rendering his opinion as to whether Plaintiffs were making sales, he considers the same evidence that will be heard by the jury. Although general background information about the sales industry is within his knowledge, there is nothing unique about the conclusions he draws from this evidence. The jury is perfectly capable of evaluating this evidence itself, and does not need an expert to suggest a particular conclusion to them.

Furthermore, although Dr. Ahearne may testify about general sales practices, he may not compare and contrast these general principles with the facts present in this case. And he may not suggest that other employers—some who may qualify for the outside salesperson exemption but many who do not—use similar supervision practices. To do so would risk usurping the jury's role of deciding the ultimate issues. He may only testify about general selling methods and practices used to monitor salespersons.

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motion to exclude the testimony of Dr. Ahearne..

IT IS SO ORDERED

Dated: September 8, 2014

s/ *James S. Gwin*
JAMES S. GWIN
UNITED STATES DISTRICT JUDGE