UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------------
                                        :
                                        :
DAVINA HURT, *et al.*,                  :
                                        :   Case No. 1:12-cv-758
            Plaintiffs,                 :
                                        :
vs.                                     :   OPINION & ORDER
                                        :   [Resolving Docs. 934, 936]
COMMERCE ENERGY, INC., *et al.*,        :
                                        :
                                        :
            Defendants.                 :
------------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this long-lingering bifurcated litigation, a jury found Defendants liable for violations of the Fair Labor Standards Act ("FLSA") and the Ohio Minimum Fair Wage Standards Act ("Ohio Wage Act").[1] After a long and complicated damage determination, the Court determined damages for the large collective action and class action.

Plaintiffs now move the Court for attorney's fees and costs.[2] They also move for incentive awards.[3] On September 20, 2018, the Court held a hearing on these issues.[4]

For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motion for attorney's fees and costs. And for the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motion for incentive awards.

## I. Attorney's Fees & Costs

Plaintiffs' seek $2,718,440.75—with a two times multiplier—in attorney's fees (detailed in the appendix).[5] Having won under the FLSA and Ohio Wage Act, Plaintiffs are

---

[1] Doc. 808; *see also* Doc. 928 (bench trial determining damages).
[2] Doc. 936. Defendants oppose. Doc. 943. Plaintiffs reply. Doc. 949.
[3] Doc. 934. Defendants oppose. Doc. 939. Plaintiffs reply. Doc. 941.
[4] Doc. 957.
[5] At one point in their motion, Plaintiffs' actually request $2,719,040.75. Doc. 936-1 at 13. But earlier in that same motion, they provide a chart detailing the requested fees. *Id.* at 5. The fees in that chart total $2,718,440.75. *Id.* The Court will use this number unless it hears otherwise..

Case No. 1:12-cv-758
Gwin, J.

entitled to reasonable attorney's fees.[6]

In determining the attorney's fees, the Court uses the lodestar calculation: the attorney's reasonable hourly rate multiplied by the number of hours reasonably spent on the case.[7] The Court addresses each side of the equation.

### A. Hourly Rates

To establish a reasonable hourly rate, the Court considers the "prevailing market rates in the relevant community."[8] Here, given the nature and location of the case, the relevant community is civil trial practitioners, with similar years of experience, practicing in Ohio.[9]

Within this community, Plaintiffs request reasonable rates. To begin, Plaintiffs seeks attorney fee rates roughly consistent with the rates reported in *The Economics of Law Practice in Ohio in 2013* ("Economics of Law").[10] By years of experience, the sought attorney rates fall near the 95th percentile of reported rates.[11] And by practice area, they are generally between the 75th and 95th percentiles.[12] It is true that, compared with the Economics of Law rates, the sought rates are on the high end of the spectrum. But the Economics of Law data is dated and attorney rates have increased since its publication.[13]

---

[6] 29 U.S.C. § 216(b); OHIO REV. CODE ANN. § 4111.10(A) (West 2017-2018).
[7] *Moore v. Freeman*, 355 F.3d 558, 565 (6th Cir. 2004) (applying the lodestar method to attorney's fees under the FLSA); *Turner v. Progressive Corp.*, 746 N.E.2d 702 (Ohio Ct. App. 2000) (applying the lodestar method to attorney's fees under the FLSA and the Ohio Wage Act).
[8] *Adcock-Ladd v. Secretary of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000) (internal quotations omitted).
[9] *Id.* ("[T]he 'prevailing market rate' is that rate which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record.").
[10] Ohio State Bar Association, *The Economics of Law Practice in Ohio in 2013: A Desktop Reference* (2013).
[11] *Id.* at 39.
[12] *Id.* at 40. The Court believes that "Trial Practice, not PI (General Civil)" is the closest available category.
[13] *See* Sandra Randazzo & Jacqueline Palank, *Legal Fees Cross New Mark: $1,500 an Hour*, The Wall Street Journal, (Feb. 9, 2016), https://www.wsj.com/articles/legal-fees-reach-new-pinnacle-1-500-an-hour-1454960708 (noting that "rates at large corporate law firms have risen by 3% to 4% a year since the economic downturn.").

And, importantly, Plaintiffs requested fees are within the spectrum of reported rates.[14]

Regarding legal staff, Plaintiffs seek a $100 legal assistant hourly rate, a $125 paralegal hourly rate, and a $150 law clerk hourly rate.[15] These rates are generally in line with the Economics of Law. In 2012, in the Greater Cleveland area, approximately: (i) 33% of paralegals charged at least $100 per hour, (ii) 19% of paralegals charged at least $125 per hour, and (iii) approximately 8% of paralegals charged more than $140 per hour.[16] Further, these rates are generally consistent with what other Ohio federal courts have awarded in FLSA cases.[17]

Finally, Plaintiffs submitted the affidavit of Subodh Chandra, who testified that—after years of studying Ohio legal rates—he gives the opinion that Plaintiffs' sought rates are reasonable.[18] This is also consistent with the Court's own experience. Thus, the Court approves Plaintiffs' requested hourly rates.

### B. The Number of Hours

In claiming attorney's fees, Plaintiffs' counsel must make a good faith effort to exclude hours that are "excessive, redundant, or otherwise unnecessary."[19] They must also submit documentation "of sufficient detail and probative value to enable the Court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation."[20]

---

[14] *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010) ("[T]he lodestar method produces an award that *roughly* approximates the [appropriate] fee . . . .")
[15] Doc. 936-1 at 5.
[16] Ohio State Bar Association, *supra*, at 43. And this considered paralegals with *no experience*. Plaintiffs' staff likely have some experience.
[17] *Barnes v. Abraham, Inc.*, No. 2:17-cv-279, 2017 WL 5714091, *5 (S.D. Ohio Nov. 28, 2017) ($105 hourly rate for paralegals and $115 hourly rate for law clerks); *Miller v. Food Concepts Int'l, LP*, No. 2:13-cv-124, 2017 WL 5247542, *6 (S.D. Ohio Nov. 13, 2017) ($85 hourly rate for legal assistants).
[18] *Id.*
[19] *Hensley v. Johnson*, 461 U.S. 424, 434 (1983).
[20] *Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 553 (6th Cir. 2008).

Case No. 1:12-cv-758
Gwin, J.

This case has lasted nearly seven years. It saw, roughly: twenty-seven substantive motions,[21] a thirty-hour jury trial,[22] a twenty-hour bench trial,[23] and forty-three witnesses.[24] In short, this case was anything but short.

Plaintiffs claim their attorneys spent about 6,890 hours on this case, and submit detailed time records and supporting affidavits to that effect.[25] The Court believes this was a reasonable number of hours and denies the hours reduction sought by Defendants.

The Court denies Defendants' requested 15% reduction in hours for "administrative and clerical tasks."[26] Many (if not most) of the tasks Defendant identified are not clerical tasks at all, but rather litigation activities which would be properly billed to a client.[27]

The Court also denies Defendants' requested 15% reduction in hours for "duplicative" entries.[28] The mere fact that more than one attorney may have worked on a task does not make the billing excessive—successful litigation usually requires just that.

Finally, the Court denies Defendants' requested 10% reduction for work that was not "successful."[29] Although the regional distributors were ultimately excluded from the class at the damages phase, it does not change the fact that Plaintiffs were still successful on their underlying *claims*. Further, although the Court excluded Plaintiffs' survey and economic expert, Defendants have not demonstrated that the related work did not

---

[21] Docs. 45, 46, 695, 811 (certification); Docs. 662, 674, 679, 687, 951, 952 (discovery disputes); Docs. 97, 810 (interlocutory appeal); Docs. 709, 710, 714, 745, 746, 747, 757, 758, 775, 863, 864 (evidentiary motions); Doc. 62 (motion to dismiss); Docs. 80, 712 (summary judgment); Doc. 810 (judgment as a matter of law).
[22] Docs. 790, 792, 798, 800, 805.
[23] Docs. 919, 920, 921, 927.
[24] Docs. 807, 919, 920, 921.
[25] Doc. 936.
[26] Doc. 943 at 6-7.
[27] *See* 943-2 (for example entries detailing receiving court documents, calls with class members, recruiting plaintiffs, and communicating with the Court).
[28] Doc. 943 at 7-8.
[29] *Id.* at 8.

ultimately contribute to Plaintiffs' overall success. "[T]he fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit . . . . The result is what matters."[30] And the result here was victory.

With over 2,000 pages of time entries,[31] it would waste judicial resources to review those entries line-by-line.[32] But after reviewing the parties' briefs, Plaintiffs submitted affidavits, Defendants' objections, and certain portions of the hourly entries—not to mention holding a hearing on the issue—the Court is satisfied that the Plaintiffs' reported hours are reasonable.

### C. The Multiplier

Plaintiffs seek a multiplied attorney's fee award under Ohio law. Generally, the Court should only enhance the lodestar calculation in exceptional circumstances.[33] Here, Plaintiffs seek a two times multiplier under the Ohio Wage Act.[34] They argue that this is appropriate in light of ten factors identified by the Ohio Supreme Court in *Bitner v. Tri-County Toyota, Inc.*[35]

At the outset, *Bitner* involved the *Consumer Sales Practices Act* not the *Ohio Wage Act*.[36] In fact, the Court is unaware of a single case—and apparently so are the parties—where a court applied a multiplier in an Ohio Wage Act case. Thus, the Court is not convinced that Ohio law even requires it to apply the *Bitner* factors to this case.

---

[30] *Hensley*, 461 U.S. at 435; *see also Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1169 (6th Cir. 1996) ("When Claims are based on a common core of facts or are based on related legal theories . . . the costs of litigating the related claims should not be reduced.").
[31] Doc. 936-2.
[32] *See, e.g., Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1984); *see also Cleveland Area Bd. of Realtors v. City of Euclid*, 965 F. Supp. 1017, 1021 n.5 (N.D. Ohio 1997).
[33] *See, e.g., Perdue*, 559 U.S. at 543.
[34] Doc. 936-1 at 7.
[35] 569 N.E.2d 464 (Ohio 1991).
[36] *Id.* at 464.

Case No. 1:12-cv-758
Gwin, J.

But even applying *Bitner*, the Court still would not grant the enhancement.  Most of the *Bitner* factors are already reflected in the Court's lodestar calculation.[37] To consider them again for an enhancement would be double counting.[38]

Nor does the Court believe that the contingent nature of Plaintiffs' attorneys' fee arrangement justifies an enhancement.[39]  And Plaintiffs' argument to the contrary—that declining to grant an enhancement here would produce a world where Defendants' lawyers earn more than Plaintiff attorneys earn—misses the mark.[40]  Fee shifting does not exist to balance the economic fortunes of the Plaintiffs' bar.[41]

In sum, this case does not cause the Court to believe the lodestar calculation requires adjustment.

### D. Costs

Plaintiffs also seek $217,120.16 in costs.[42]  Conversely, Defendants argue that many of the costs are impermissible and seek a 10% reduction.[43]  However, beyond broad categories of grievances, Defendants fail to identify any particular expense as objectionable.[44]

Plaintiffs supported their request with detailed entries,[45] which the Court has

---

[37] Such subsumed factors include the: (i) time and labor involved, (ii) novelty and difficulty of the case, (iii) professional skill required, (iv) inability to accept other legal services, (v) amount involved and the results obtained, (vi) fee customarily charged, and (vii) ability and reputation of the attorneys.

[38] *See Blum v. Stenson*, 465 U.S. 886, 898–900 (1984) (holding that many of the identified factors are already considered by the lodestar calculation).

[39] *City of Burlington v. Dague*, 505 U.S. 557 (1992) (holding that the contingent nature of a fee arrangement will generally not justify an enhancement to the lodestar.).

[40] Doc. 936-1 at 11-12; *see also* Doc. 936-15 at 5.

[41] *See Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) ("[Fee-shifting] statutes were not designed as a form of economic relief to improve the financial lot of attorneys . . . .").

[42] Doc. 936-1 at 13.

[43] Doc. 943 at 9.

[44] *Id.*

[45] Doc. 936-7.

reviewed, and with an affidavit.[46] The Court concludes that the sought costs were reasonably related and necessary to the litigation in this case and are thus granted.

## II. Incentive Awards

Plaintiffs seek $105,000 in incentive awards for twenty-three Plaintiffs who spent 186 hours on this case.[47] All twenty-three sat for depositions, fifteen also testified at trial, and two did those things *and* participated in the pre-suit investigation, litigation strategy, hearings, and written discovery.[48] Plaintiffs submitted a detailed affidavit documenting these efforts and the time spent.[49]

Courts use incentive awards to reward class members who have been disproportionally involved in the case.[50] The awards recognize that litigation burdens are frequently borne by only a few class members, but whose efforts benefit the class as a whole.

The Sixth Circuit has—on three separate occasions—passed on the propriety of incentive awards.[51] But, while the Sixth Circuit has expressed certain concerns about incentive awards,[52] it has also indicated that they might be appropriate in some situations.[53] This is one such situation.

First, granting incentive awards here will not "lead named plaintiffs to expect a bounty for bringing suit."[54] The awards are supported by "specific documentation" and are

---

[46] Doc. 936-8.
[47] Doc. 934 at 1.
[48] *Id.*
[49] Doc. 945.
[50] *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003).
[51] *Hadix*, 322 F.3d at 898; *In re Dry Max Pampers Litig.*, 724 F.3d 713, 722 (6th Cir. 2013); *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 310-311 (6th Cir. 2016).
[52] *In re Dry Max Pampers Litig.*, 724 F.3d at 722 ("[T]o the extent that incentive awards are common, they are like dandelions on an unmowed lawn—present more by inattention than design.").
[53] *Hadix*, 322 F.3d at 898.
[54] *Shane Grp., Inc.*, 825 F.3d at 311 (internal quotations omitted).

directly related to the "time actually spent on the case by each recipient of an award."[55]

Second, there is no risk that the incentive awards would encourage the recipients "to compromise the interest of the class for personal gain."[56] This concern may be present in the settlement context, where high incentive awards might persuade a class representative to approve an otherwise lousy settlement. But it evaporates entirely in cases like this one, where the request for incentive awards comes after a trial already determined liability and damages.

Third, contrary to Defendants' position, *Hadix v. Johnson*[57] does not categorically foreclose incentive awards in cases without a common fund or settlement agreement. In *Hadix*, "there [was] neither authorization in the consent decree for th[e] incentive award nor a common fund from which it could be drawn."[58] Thus, the Sixth Circuit held that it was "plainly inappropriate to grant an incentive award."[59] Though *Hadix*'s language is somewhat broad, its reasoning is linked to the case facts. In *Hadix*, the parties entered a consent decree that did not provide incentive awards. Thus, granting awards would have imposed an "additional burden . . . above and beyond the liability they had agreed to."[60] That concern is absent here.

While the lack of a settlement agreement or common fund does not foreclose incentive awards entirely, it nonetheless weighs on the Court's reasoning. The purpose of incentive awards is to compensate certain class members for doing the yeoman's work for the class as a whole. Given this purpose, it would be unfair to require the Defendants to

---

[55] *Id.*
[56] *Id.*
[57] 322 F.3d 895 (6th Cir. 2003).
[58] *Hadix*, 322 F.3d at 888.
[59] *Id.*
[60] *Id.*

subsidize Plaintiffs' endeavors. Therefore, the Court instead concludes that the incentive awards should be taken from the attorney's fees granted in this Opinion. This is the best way to reward the Plaintiffs' efforts without requiring the Defendants to pay an additional award.

Finally, in the Court's experience, the sought incentive awards are too high. The awards should properly reward the Plaintiffs for their efforts, *without* creating a bounty for bringing suit. Thus, the Court grants $5,000 each to Davina Hurt and Dominic Hill, the Plaintiffs most involved in the case. And the Court grants $2,500 each to the remaining Plaintiffs for whom incentive awards are sought.[61]

### III. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motion for attorney's fees and costs. And for the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motion for incentive awards. Accordingly, the Court orders Defendants to pay Plaintiffs $2,718,440.75 in attorney's fees and $217,120.16 in costs, as detailed in this Opinion. From those attorney's fees, the Court orders Plaintiffs' attorneys to pay $62,500 in incentive awards, as detailed in this Opinion.

IT IS SO ORDERED.

Dated: September 28, 2018                 *s/ James S. Gwin*
                                                               JAMES S. GWIN
                                                               UNITED STATES DISTRICT JUDGE

---

[61] The remaining Plaintiffs being: Tyelynn White, Candice Avery, Bruce Abbott, Tierra Coleman, Cindy Coreus, Robin Lewis, Mark Ebbers, Jessica Huber, Willie Stephens, William Hodge, Brandy Rivas, John Davis, Michael Norman Pfauth, Naddia Bazar, Stayce Fitzpatrick, Phillip Scott, Kimberly Starks, Denise Williams, Wayne Danice, Jr., Jenelle Riley, and Briana Purnell.

# APPENDIX

| Attorney | Hourly Rate | Hours Spent | Fee |
|---|---|---|---|
| Michael Rudick | $250 | 669.4 | $167,350 |
| Andrew Samtoy | $300 | 10 | $3,000 |
| Frank Bartela | $325 | 1214.11 | $394,585.75 |
| Shelley Fleming | $375 | 885.6 | $332,100 |
| Kristen Stuber | $375 | 161 | $60,375 |
| Grant Keating | $375 | 12.3 | $4,612.50 |
| Jim Timmerberg | $450 | 360.90 | $162,405 |
| Nicole Fiorelli | $450 | 2032.2 | $914,490 |
| Kristen Kraus | $450 | 45.3 | $20,385 |
| Ric Selby | $550 | 528.4 | $290,620 |
| Patrick Perotti | $650 | 470.8 | $306,020 |
| **Staff Member** | **Hourly Rate** | **Hours Spent** | **Fee** |
| Amanda Schrank (Paralegal) | $125 | 353.7 | $44,212.5 |
| Jon Freund (Legal Assistant) | $100 | 3.9 | $390 |
| Law Clerk | $150 | 72.3 | $10,845 |
| Nancy Strubbe (Legal Assistant) | $100 | 70.5 | $7,050 |
| | TOTALS: | 6890.41 | $2,718,440.75 |